**EDWARD B., et al.**

v.

**Robert L. BRUNELLE, Commissioner, et al.**

**No. C86–6–L.**

United States District Court, D. New Hampshire.

June 5, 1986.

Order on Motion to Reconsider Nov. 17, 1986.

Ronald K. Lospennato, Concord, N.H., for plaintiff.

Office of the Attorney Gen., Concord, N.H., for defendant.

## ORDER ON PENDING MOTIONS

LOUGHLIN, District Judge.

This case began in this court on January 7, 1986 when plaintiffs Laurie and Edward B. filed an action under 42 U.S.C. § 1983 and 20 U.S.C. § 1401 *et seq.*, The Education for All Handicapped Children Act (EAHCA). The basis of the claim, filed against Robert Brunelle, Commissioner of the New Hampshire Department of Education, and the members of the State Board of Education, is that handicapped children who are placed in residential facilities pursuant to juvenile court proceedings are being deprived of a "free appropriate public education" as mandated by the EAHCA. The plaintiffs seek relief for themselves and others similarly situated and ask for certification of this case as a class action.

At the same time plaintiffs filed separate actions in this court; one against the Roch-

ester School District and the Merrimack Valley School District claiming a violation of 42 U.S.C. § 1983, 20 U.S.C. § 1401 *et seq.*, N.H. RSA ch. 186–C, § 504 of the Rehabilitation Act, the equal protection and due process clauses of the fourteenth amendment to the United States Constitution and the equal protection provisions of the New Hampshire Constitution; the other seeking transcripts at no expense to plaintiffs. The latter is currently on appeal to the First Circuit Court of Appeals.

Subsequent to the original complaint, plaintiffs sought a motion to intervene which this court granted. The plaintiff intervenors are James O., Kelly E. and William B. and claim the same violations as do plaintiffs Edward and Laurie B. Plaintiffs' second amended complaint was allowed on May 5, 1986. This action has been bogged down with numerous motions, amendments, etc. Currently pending in this case is a motion for preliminary injunction, motion to dismiss and motion for class certification.

Laurie B. is a twenty-two year old mildly retarded, emotionally disturbed young adult who received special education in New Hampshire. During the year in question, 1980–81, she was seventeen years old. Edward B. is her father.

James O. is severely multi-handicapped and in the custody of the Division of Children and Youth Services (DCYS) pursuant to N.H. RSA ch. 169–C. Plaintiffs claim James O. was removed from special education because of his medical condition but that no surrogate parent was ever appointed for him and no parental participation nor notice occurred prior to his discharge from special education. Thus, plaintiffs claim James was denied the protections of the EAHCA and regulations promulgated thereunder.

William B. is a thirteen year old who is seriously emotionally disturbed and has a learning disability. He is currently in the custody of DCYS and was placed at the Youth Development Center on November 2, 1985 per order of Plaistow District Court. Plaintiffs claim that no school district has been willing to assume financial or pro-grammatic responsibility for Billy and that no Individualized Education Program (IEP) has been developed for him; hence, he is not receiving a free appropriate public education.

Kelly E. has been classified as seriously emotionally disturbed and mentally retarded; he is fourteen years old. Kelly was placed in the custody of DCYS pursuant to N.H. RSA ch. 169–C, the Child Protection Act. He is currently at Pike School, a private residential school. Plaintiffs claim that the educational program is not being provided pursuant to a valid IEP nor at public expense under public supervision and direction as required by the EAHCA.

The basis of plaintiffs' claims is that children who are placed pursuant to N.H. RSA chs. 169–B, 169–C or 169–D are not receiving a free appropriate public education as required by the EAHCA. Plaintiffs claim that proper notice is not being given to parents and that surrogate parents are not being appointed for those children who require them.

*Preliminary Injunction Relief*

Plaintiffs seek a preliminary injunction ordering the following relief:

1. Order the State Department of Education Defendants to forthwith:

a. Contract with the Office of Public Guardian at a reasonable rate per student to serve as surrogate parent whenever the assignment of a surrogate parent is necessary.

b. Assign the Office of Public Guardian to serve as surrogate parent for William B.

c. Assign the Office of Public Guardian to serve as surrogate parent for Kelly E. if the appointment of a surrogate parent is deemed necessary.

d. Identify and locate all children who are in the custody of the New Hampshire Division for Children and Youth Services who are in need of a surrogate parent.

e. Assign the Office of Public Guardian to serve as surrogate parent for any child in the custody of the New Hampshire Division of Children and Youth Ser-

vices who is in need of a surrogate parent.

2. Order the Rochester School District Defendant and the State Department of Education Defendants to:

a. Assume financial responsibility for Kelly E.'s Court ordered program and placement at the Pike School in Pike, New Hampshire, including his program of special education and related services, non-medical care and room and board.

b. Develop and Individualized Education Program for said program and placement.

c. Assume responsibility for the direction and supervision of said program and placement.

d. Continue to assume financial responsibility, direction and supervision of said program and placement pending any and all administrative or judicial proceedings.

3. Order Timberlane School District Defendant and the State Department of Education Defendants to:

a. Assume financial responsibility for William B.'s court-ordered program and placement at the Youth Development Center in Manchester, New Hampshire.

b. Develop an Individualized Education Program for William B.'s educational program and placement at the Youth Development Center.

c. Assume responsibility for the direction and supervision of said program at the Youth Development Center.

d. Consider whether some other placement than the Youth Development Center is appropriate to meet William B.'s unique educational needs.

e. Consider whether a residential placement other than the Youth Development Center is necessary for William B. to benefit from special education and related services.

A party seeking injunctive relief in this circuit must demonstrate:

(1) irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on [the opposing party]; (3) a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction. *Auburn News Co., Inc. v. Providence Journal Co.,* 659 F.2d 273, 277 (1st Cir.1981). Of these four factors, the probability-of-success component in the past has been regarded ... as critical in determining the propriety of injunctive relief. *See e.g., Planned Parenthood League v. Bellotti,* 641 F.2d 1006, 1009–22 (1st Cir.1981).

*Lancor v. Lebanon Housing Authority,* 760 F.2d 361, 362 (1st Cir.1985).

■ Plaintiffs have not shown that they will suffer irreparable harm if the injunction does not issue. In fact, they may suffer more harm if this court orders the state to develop a completely new process for appointing surrogate parents to those children who need them. Although there may be flaws in the current program, there is such a program in place. It would make more sense to attempt to correct the problems in the present program than to begin anew.

■ With regard to this court ordering the school districts to assume financial responsibility, the school districts themselves are not parties to the present action. This court acknowledges that the State Board of Education has a responsibility under the EAHCA to provide for a free appropriate public education and to insure that the school districts are meeting their responsibilities. The proper procedure in such a case, however, is to proceed through the administrative process before seeking judicial review.

No administrative review has been sought in any case other than that of Edward and Laurie B. There is currently a case pending against the Rochester School district with regard to payment for Kelly E.'s placement. This court will not entertain any claim for payment of costs for any individual child's placement until administrative remedies have been exhausted. Such is the case with Laurie B. and, in fact, such a case has been filed with this court.

Accordingly, plaintiffs' motion for a preliminary injunction is hereby denied.

■ The court will, however, order interim relief. Plaintiff intervenors have demonstrated a likelihood of success on their claims surrounding the denial of a "free appropriate public education."

Ellen Gordon testified that William B. had been coded learning disabled in grammar school, with secondary emotional disturbance. During the 1984–85 school year he was placed in a number of different schools, none of which developed an IEP for him. Atty. Gordon contacted a number of school districts that might be liable but only Timberlane attended the meeting in February, 1986. There it was suggested that an IEP be developed for William. At another meeting, held in April, Timberlane said they needed more time and a meeting was scheduled for the end of May.

Jacklyn Teague, the director of the surrogate parent program, testified that requests for surrogate parents usually originate from the school district. She testified that there was no system whereby DCYS must submit to the Department of Education a list of children who need special education and surrogates. She also stated that the case workers should know which children have already been identified as needing special education services.

Ms. Teague testified that approximately 89 children are awaiting surrogate parents, some since 1981 and 1982; normally, it takes four to six weeks for appointment of a surrogate.

It is clear from the record in this case that something is wrong with the system as it exists presently. Children who are in need of special education services and placed by the juvenile courts should be brought to the attention of the State Department of Education immediately. These children cannot be provided a "free appropriate public education" as mandated by the EAHCA if there is no parent to be involved in the development of the child's educational program. Most of the children committed to DCYS have no parental involvement.

The New Hampshire Standards for the Education of Handicapped Students has specific guidelines for identifying children in need of special education who have been placed at the Youth Development Center. Ed. 1136.01 *Child Find*

(a) Within three days of a court-ordered placement of an individual at the Youth Development Center, the Youth Development Center staff shall notify the legally liable LEA, to determine whether the child has previously been determined to be educationally handicapped under these *Standards*.

(b) For any child for whom no previous handicapping condition exists or is known to the Development Center staff, upon initial evaluation or any point thereafter, if the Youth Development Center staff suspects that a handicapping condition exists, it shall notify in writing the liable LEA to request an evaluation of such child by the LEA in accordance with ED 1107.

(c) Should a parent be unavailable or unwilling to authorize an evaluation, the court having jurisdiction shall be requested to appoint a surrogate or prescribe such other measures as it may deem appropriate.

It appears that the above provisions are being neglected, at least in some cases. As Ms. Teague testified, there is no system by which the requirements of those regulations are carried out. In her deposition on April 2, 1986, she testified that there was no process by which DCYS submitted a list of names of children who are *already* coded as educationally handicapped. Deposition of J. Teague at 13. This is information that DCYS has available, as is information regarding the need for a surrogate parent. Further, the need for a surrogate can be made known by anyone who has contact with the child. *See* Rule Ed. 1121.01(a). Where "special circumstances" exist the Department of Education, rather than the local educational agency, conducts the investigation and determines the need for a surrogate. *Id.* § 1121.01(d).

It is clear that in many cases the determination of the need for surrogate parents has not been made. The fact that the child may be receiving some kind of special education does not relieve the state of its re-

sponsibility to provide a "free appropriate public education" as mandated by the EAHCA. To meet the mandate of the federal Act, there must be parental involvement and the development of an IEP pursuant to the guidelines set by federal and state law.

Although the relief sought by plaintiffs in their motion for preliminary injunction is not appropriate, this court finds that many children will suffer irreparable harm if they are forced to await the outcome of this litigation. In view of the above, this court makes the following order:

The State Department of Education is ordered to review the list of those children who are awaiting the appointment of surrogate parents, to update that list to determine which children are still in need of a surrogate and to complete with all haste any further investigation needed in order to determine eligibility for a surrogate. The Department of Education will submit to this court, within 30 days, a report containing a list of all children still in need of a surrogate, what needs to be done to complete the process and a plan to expedite the process of having a surrogate appointed for all children currently in need of one.

*Motion to Dismiss*

■ Defendants seek to dismiss the actions of Laurie and Edward B. and the plaintiff intervenors. Defendants offer numerous challenges to plaintiffs' actions. Edward and Laurie B. do have standing to bring the present action. At the time in question, Laurie B. was an educationally handicapped minor and Edward B. was, and is, her father. They are claiming a violation of the EAHCA, which grants rights to both educationally handicapped children and their parents.

Defendants seek to dismiss plaintiff's complaint as being barred by the eleventh amendment.

■ The eleventh amendment to the United States Constitution bars suits in Federal Court against an unconsenting State brought by her own citizens or citizens of another state. *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347,

1355–56, 39 L.Ed.2d 662, *reh'g denied,* 416 U.S. 1000, 94 S.Ct. 2414, 40 L.Ed.2d 777 (1974). Where an individual is named, the eleventh amendment will apply where the state is the real party in interest, *Pennhurst State School v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (citations omitted). Further, the eleventh amendment bar would apply "regardless of whether the suit seeks damages or injunctive relief." *Pennhurst,* 104 S.Ct. at 909 (citing *Corey v. White,* 457 U.S. 85, 91, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982)). Finally, even an action brought under 42 U.S.C. § 1983 is subject to the application of the eleventh amendment. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

■ The determination of whether the eleventh amendment applies is a matter of federal law. *Long v. Richardson,* 525 F.2d 74 (6th Cir.1975); *John H. v. Brunelle,* 631 F.Supp. 208, 210 (D.N.H.1986); *Marrapese v. Rhode Island,* 500 F.Supp. 1207 (D.R.I. 1980). This court previously has followed the principle set out by the first circuit in *David D. v. Dartmouth School Committee,* 775 F.2d 411 (1st Cir.1985). *See John H.,* 631 F.Supp. at 211–213. The court in *David D.* found that Congress had effectively abrogated states' eleventh amendment immunity by enacting the EAHCA. *David D.,* 775 F.2d at 420–21.

The court in *David D.* reasoned that a state must enact policies and procedures consistent with the EAHCA, in order to guarantee a free appropriate public education to handicapped children. 775 F.2d at 411; *see also* 20 U.S.C. §§ 1412(2) and 1413(a)(1). The Act allows parents and children to bring a complaint 'with respect to any matter related to the identification, evaluation or educational placement of the child, or the provision of a free appropriate public education to such child.' 20 U.S.C. § 1415(b)(1)(E). Thus, the first circuit found that the State was a proper party in federal court under the EAHCA. 775 F.2d at 411. The court correctly recognized that the EAHCA is directed only to states and their political

*subdivisions.* Id. *at 422;* see also *20 U.S.C. §§ 1412 and 1413.*

Regardless of whether the state statute provides more protection than the Act, a determination of whether the EAHCA has been violated, must necessarily involve an inquiry regarding the state statutes promulgated in response to the federal mandate. A court cannot discuss the EAHCA in a vacuum but must look to the state statutes as an integral part of its inquiry.

*John H.,* 631 F.Supp. at 211–12. Thus, it is clear that the federal court has the authority to interpret and enforce pertinent state substantive law as part of ensuring a "free appropriate public education" as required by the EAHCA. *See David D.,* 775 F.2d at 420; *John H.,* 631 F.Supp. at 212–13.

■ The court in *David D.* reiterated the holding of *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) which stated that no 42 U.S.C. § 1983 claim was available for denial of equal protection where that claim was virtually identical to the claims under the EAHCA. *David D.,* 775 F.2d at 421 (citing *Smith,* 104 S.Ct. at 3468-69). The Court in *Smith* found that the EAHCA was the exclusive avenue for vindicating rights to a "free appropriate public education." *Id.* at 3470. The Court left open the question of whether an independent due process challenge could be maintained. *Id.* The Court further held that § 504 of the Rehabilitation Act was not available as an alternative remedy where plaintiff's claim is essentially the same as that under EAHCA. *Id.* at 3474. In the present action, plaintiffs seek declaratory and injunctive relief. Their claims under § 1983, the due process clause of the fourteenth amendment and the equal protection clause are in essence claims under the EAHCA. Thus, plaintiffs exclusive remedy is under the EAHCA. The present action, however, is not barred by the eleventh amendment. Further this court's jurisdiction extends to state law and regulations promulgated under the EAHCA. *See John H.,* 631 F.Supp. at 212.

Plaintiffs' claims for attorneys fees must be dismissed. Plaintiffs may not maintain their action under 42 U.S.C. § 1983, thus there is no basis for a claim of attorneys fees.

■ Plaintiffs' claims are not barred by the statute of limitations. Defendants seek to impose a thirty-day statute of limitations for appealing a decision of the impartial due process hearing officer. In the case of Edward and Laurie B., the decision of the impartial due process hearing officer was rendered on November 4, 1985; the present action was brought in this court on January 7, 1986.

The decision in *Hawaii v. Carl D.,* 695 F.2d 1154 (9th Cir.1983), relied on by defendant has no application to the issue in dispute. In *Hawaii v. Carl D.,* the court held that there was a thirty-day statute of limitations for appealing a decision of the hearing officer to the federal district court pursuant to § 1415(e)(2). 695 F.2d at 1156–57. The Hawaii statute of limitations governing review of administrative decisions was borrowed for appeals under § 1415(e) as the two were deemed analogous. 695 F.2d at 1156–57. The Hawaii statute, unlike a Nebraska statute which had been deemed inapplicable by another court, provided for the introduction of additional evidence on judicial review of an administrative decision. *Id.* at 1157. Section 1415(e)(2) also allows such additional evidence. *Id.*

Unlike the Hawaii statute, the applicable New Hampshire statute, N.H. RSA ch. 541, does not provide for the introduction of evidence in addition to the administrative record. RSA § 541:14. Under certain circumstances, the court can merely remand with direction to the administrative body to consider new evidence. *Id.* Thus, in the present case, the court will not borrow the statute of limitations from N.H. RSA § 541:6 which is 30 days. Further, plaintiff filed the present action 64 days after the decision of the due process hearing officers. Such a time span can hardly be found unreasonable. Accordingly, this court finds that plaintiffs' action seeking enforcement of the EAHCA is not time barred.

■ This court does not agree that plaintiffs have failed to state a claim upon which relief may be granted.

The material facts alleged in the complaint are to be construed in the light most favorable to the (non-moving party), and taken as admitted with dismissal ordered only if the (non-moving party) is not entitled to relief under any set of facts they could prove. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969) *reh'g denied* 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123 (1969); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Harper v. Cserr*, 544 F.2d 1121, 1122 (1st Cir. 1976). Upon review of a complaint before receipt of any evidence, the issue is not whether the (non-moving) party will ultimately prevail or is likely to prevail, but is whether the (non-moving) party is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

A motion to dismiss is one of limited inquiry. The standard for granting a motion to dismiss is not the likelihood of success on the merits, but whether the plaintiff is entitled to offer evidence to support his claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint should not be dismissed unless it appears that appellant could "prove no set of facts in support of his claim which would entitle him to relief". *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969), *reh'g. denied* 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123 (1969).

20 U.S.C. § 1415 requires those states that receive assistance under the EAHCA to establish procedures to insure "that handicapped children and their parents or guardians are guaranteed procedural safeguards with respect to the provision of free appropriate public education...." 20 U.S.C. § 1415(b)(1)(C) requires: "written prior notice to the parents or guardian of the child whenever such agency or unit—(i) proposes to initiate or change, or (ii) refuses to initiate or change, the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child...." The notice must "fully inform the parents or the guardian ... of all procedures available pursuant to this section [§ 1415]...." 20 U.S.C. § 1415(b)(1)(D). The parents or guardian must also have "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." *Id.* § 1415(b)(1)(E).

Whenever a complaint has been received under paragraph (1) of this subsection, the parents or guardian *shall have an opportunity for an impartial due process hearing* which shall be conducted by the State educational agency or by the local educational agency or intermediate educational unit, as determined by State law or by the State educational agency.

*Id.* § 1415(b)(2) (emphasis added). Where the impartial due process hearing required above is conducted by the local educational agency "any party aggrieved by the findings and decision rendered in such a hearing may appeal to the State educational agency which shall conduct an impartial review of such hearing." *Id.* § 1415(c).

A party aggrieved by the decision of the State educational agency, whether it be in the first instance under § 1415(b)(2) or on appeal from a decision of the local school district, under § 1415(c), "shall have the right to bring a civil action with respect to the complaint presented pursuant to this section [§ 1415], which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy." *Id.* § 1415(e)(2). After hearing on the matter the court, "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Id.* During the pendency of such proceeding, the child shall remain in the "then current educational placement...." *Id.* § 1415(e)(3).

Plaintiffs Laurie and Edward B. base their claims on the failure of any school district to pay for Laurie's placement at Rivendell School. Plaintiff intervenors base their claims on the allegations that educationally handicapped children who are placed pursuant to the juvenile proceedings are not being provided the procedures, mandated by state and federal law, for insuring a free appropriate public education. The complaint alleges facts which, if proven, would support plaintiffs' claims. The intervenors have alleged facts which show that they have not had IEP's developed for them, that some are being provided no special education at all, that many children who are in need of surrogate parents have not received them and that generally this is a problem with many children placed under RSA chs. 169–B, 169–C and 169–D. Plaintiffs Edward and Laurie B. have alleged that no town has assumed financial responsibility for Laurie's placement at Rivendell.

At this stage, plaintiffs have alleged enough to survive a motion to dismiss based on Rule 12(b)(6), failure to state a claim.

The final challenge that this court will address is that of exhaustion of administrative remedies. Edward and Laurie B. were afforded an impartial due process hearing at the administrative level. A decision from such a hearing may be appealed to this court under 20 U.S.C. § 1415(e)(2). *See also* New Hampshire Standards for the Education of Handicapped Students, Rule Ed. 1127.02(a)(13). This court recognizes that the State Board of Education was not a party to the administrative action. Rochester School District, however, sought to join the state, but the request was denied by the hearing officer. Thus, Edward and Laurie B. have exhausted their administrative remedies. The plaintiff intervenors need not exhaust administrative remedies in their claims regarding the failure of the State to provide a "free appropriate public education" for children placed by the juvenile courts pursuant to RSA chs. 169–B, 169–C and 169–D. They do need to exhaust administrative remedies regarding li-

ability of any particular school system to assume financial responsibility in any child's individual case.

The present case is not unlike the case heard in this district involving the Laconia State School, *Garrity v. Gallen*, 522 F.Supp. 171 (D.N.H. 1981). In *Garrity*, one of plaintiffs' allegations was that children who were placed at the Laconia State School and Training Center were being denied a "free appropriate public education" as mandated by the EAHCA. With regard to the claim under that statute, the court found that plaintiffs did not have to exhaust administrative remedies.

> Upon review of the evidence here presented, this court reaffirms its earlier decision (February 22, 1980, at pp. 9–11) that plaintiffs were not required to exhaust their administrative procedures under the EAHCA. The reasons for this ruling, are, first, that administrative procedures which existed in the State of New Hampshire were and are defective and, second, and more fundamentally, many of the members of the subclass had no access to same, in that they have lacked available parents and/or guardians, and the State has failed to provide them with either such guardians or a surrogate parent. Accordingly, exhaustion of administrative remedies is found by this court to be futile, and the Court follows the well-reasoned decisions of a number of lower courts that in such circumstances exhaustion of administrative remedies is not required.

*Id.* at 220.

The evidence in the present case shows that many of the children members of the class are without surrogate parents. Jacklyn Teague testified that approximately 85 children are listed in her records as waiting for assignment of a surrogate parent. Some have been on the list since as early as 1981 or 1982. Ms. Teague never really offered any explanation for why some children have been waiting so long. In her deposition, she alluded to the problem of gathering information needed for determining eligibility for surrogate parents. Deposition of J. Teague, April 2, 1986, at 26, 27.

Since many children presently are in need of surrogate parents, they are unable to partake of the procedural safeguards set up by the Department of Education. As plaintiffs are challenging the procedure itself by which appointments are made and special education provided, they need not exhaust administrative remedies and may maintain an action in this court.

Laurie and Edward B. may, however, maintain their action only in relation to determining liability for payment of Laurie's placement at Rivendell. Plaintiffs seek declaratory and injunctive relief regarding their other claims. Since Laurie is no longer eligible for special education and has no need for a surrogate, any order regarding the system presently in effect would be of no direct benefit to her or her father. As stated previously, they seek reimbursement and a determination of liability against the Rochester and Merrimack Valley School districts in a separate action. The present claim against the State Board of Education should be realigned to be included in that case, #C–86–7–L.

### Certification of Class Action

■ Plaintiffs seek to have the present action certified as a class action pursuant to Fed.R.Civ.P. 23. The purported class is as follows:

All educationally handicapped students in New Hampshire who are or were placed in a facility pursuant to proceedings under New Hampshire RSA 169–B, 169–C or 169–D, and who are not receiving, or did not receive, a free appropriate public education. The class also consists of the following subclasses:

a. such children whose parents have been or may be held liable for all or a portion of the costs of said placement, including the educational component of said placement;

b. such children whose educational programs are not being provided under the supervision and direction of a legally liable school district;

c. such children whose educational programs are not being provided in conformity with an Individualized Education Program (IEP), which meets the requirements of 34 C.F.R. §§ 300.340–300.349; and

d. such children who are in need of a surrogate parent but do not have one.

Rule 23(a) provides as follows:

(a) *Prerequisites to Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Defendants contend that plaintiffs' action should fail as a class action as plaintiffs do not meet any of the requirements of Rule 23.

### Numerosity

At this stage, plaintiffs need not know the precise number of class members. *Somerville v. Major Exploration, Inc.*, 102 F.R.D. 500, 503, (S.D.N.Y.1984); *In re Screws Antitrust Litigation*, 91 F.R.D. 52, 55 (D.Mass.1981). David Bundy, Director of DCYS, testified that DCYS has a legal relationship with approximately 1,000 children pursuant to RSA ch. 169–C; 50 children adjudicated CHINS under RSA ch. 169–D and 100 children adjudicated delinquent under RSA ch. 169–B. Deposition of D. Bundy, at 11, 12 and 17. Of those in the latter group at the Youth Development Center, approximately 50% are educationally handicapped. *Id.* at 16. The other groups also contain a significant number of educationally handicapped children. *Id.* at 16–17, 34–36. Further, there are 85–89 children for whom requests for surrogate parents are pending.

Thus, joinder would clearly be impracticable and the numerosity requirement is satisfied.

### Common Questions of Law or Fact

The class members share common complaints. All have been placed by the juvenile courts pursuant to RSA chs. 169–B, 169–C, or 169–D and all are in need of

special education services. All complain that the system as it is presently functioning denies them of a "free appropriate public education" as mandated by the EAHCA. Thus, the second requirement is satisfied.

*Typicality*

The claims of Laurie and Edward B. are not typical of the class. Laurie B.'s case is in essence one for reimbursement for expenses incurred by her father for her court-ordered placement. Although she and her father claim that the issues they raise in this action were all litigated below, there is no indication of this. It appears that the issue presented in the administrative setting was who would be liable for payment of Laurie's placement at Rivendell. That very issue is the basis for another suit filed in this court against the Rochester School District. Further, there was never an issue of appointing a surrogate for Laurie as her father has been involved from the beginning. Thus, plaintiffs Laurie and Edward B. would not be proper class representatives. Finally, as stated previously, their claim has been severed from this case and realigned with #C–86–7–L.

The plaintiff intervenors, however, are typical of the other members. The fact that one or two of them may already have surrogates is of no consequence. They were not appointed surrogates until after the instant case was filed in this court. The state cannot defeat plaintiff intervenors' standing to represent the class by hurriedly attempting at the eleventh hour to push through their petitions for surrogate parents. There are still 85–89 children whose petitions are still pending. Further, the plaintiff intervenors are still claiming that the system itself is flawed, or at best, is not being implemented to insure that these children receive the special education that is mandated by the EAHCA and state law promulgated thereunder.

*Fair and Adequate Representation*

The plaintiff intervenors will fairly and adequately represent the class. Plaintiffs must show that their attorneys are qualified, experienced and generally able to conduct the proposed litigation, and that plaintiffs do not have interests antagonistic to those of the class. *Gallen v. Garrity*, 522 F.Supp. at 224.

There is no question that plaintiffs' attorneys are qualified. The Developmental Disabilities Advocacy Center was developed in order to provide advocacy for developmentally disabled people. The center specializes in the type of litigation involved in this case and in fact has represented a number of plaintiffs in various cases before this court. Further, the plaintiff intervenors share with the class common goals and objectives; their interests are the same, i.e. insuring that they and all other educationally handicapped children placed by the juvenile courts pursuant to RSA chs. 169–B, 169–C, or 169–D receive a "free appropriate public education" as mandated by state and federal law. Thus, plaintiff intervenors would fairly and adequately represent the interests of the class. While some may have been assigned surrogates, there is still a serious question about the special education being provided for the plaintiff intervenors and others similarly situated.

This court notes that a district court has broad discretion in determining issues of class certification. *Califano v. Yamaski*, 442 U.S. 682, 703, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979).

Accordingly, this court finds that the requirements of Rule 23 are satisfied and that plaintiff intervenors may represent the class. The class is hereby certified as requested by plaintiffs with the three named plaintiff intervenors serving as class representatives.

## ORDER ON MOTION TO RECONSIDER

Plaintiff intervenors James O., Kelly E. and William B. request the court to reconsider its order of October 17, 1986 denying reinstatement of their claims brought pursuant to 42 U.S.C. § 1983 (1986).

On reconsideration, the court finds that Section 3 of the Handicapped Children's Protection Act of 1986, Pub.L. No. 99–372, 100 Stat. 796 is to be applied to cases that

were pending as of the Act's effective date of August 5, 1986.

Section 3 of the Act, amending 20 U.S.C. § 1415, provides as follows:

Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights of handicapped children and youth, except that before the filing of a civil action under such laws, seeking relief that is also available under this part, the procedures under the subsections (b)(2) and (c) shall be exhausted to the same extent as would be required had the action been brought under this part.

As evidenced in the legislative history, it appears the legislature's intent is to provide that the Education for All Handicapped Children Act, 20 U.S.C. § 1400 et seq., is not an exclusive remedy, overruling *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 3470–74, 82 L.Ed.2d 746 (1984).

While Section 3 is not to be applied retroactively, Section 3 is to be applied to cases pending at the time of its enactment. The basis of this court's decision is the principle espoused in *Bradley v. Richmond School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), specifically "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary."

No "manifest injustice" will occur if plaintiffs are allowed to reinstate their claims for violations of due process and equal protection brought pursuant to 42 U.S.C. § 1983. Therefore, the court's order (Doc. #61) in this action of October 17, 1986 is vacated.