Joseph **SPIEGLER**, et al., Appellants

v.

**DISTRICT OF COLUMBIA**, et al.

No. 88–7092.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 17, 1988.
Decided Jan. 27, 1989.

Matthew B. Bogin, with whom Michael J. Eig, Washington, D.C., and Margaret A. Kohn were on the brief, for appellants.

Mary L. Wilson, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellees.

Before MIKVA, BUCKLEY, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

The issue in this case is whether appellants' claims under the Education of the Handicapped Act, 20 U.S.C. §§ 1400–1485 ("EHA" or "Act"), are time-barred.

The Act provides that parties to state administrative proceedings may bring a civil action in federal court to challenge the findings and decision of such proceedings. *See* § 1415(e)(2). Because the Act is silent as to a limitations period for such actions, we elect to borrow a measure from a suitable local law. We hold that the 30–day local time limit for petitions for review of agency orders would be appropriate, but that the Act requires the District of Columbia ("District") to give clear notice to parties of the availability of judicial review and of the relatively short statute of limitations.

Because the District failed to give adequate notice to appellants in this case, we conclude that the 30–day limitations period cannot be applied to them and accordingly reverse the district court's dismissal of appellants' claims under the Act.

### I.

#### A. *Factual and Procedural Background*

Appellant Joseph Spiegler is a learning-disabled child (now 15) who had completed the fourth grade in a non-special education private school in June 1984 when his parents filed a request with the District of Columbia Public Schools ("DCPS") for special education and related services for Joseph. In August 1984, the DCPS prepared an "individualized education program" ("IEP") for Joseph, proposing that he attend the Janney Learning Center, a public school special education program in which handicapped students are placed with non-handicapped students for a quarter of their curriculum.

Joseph's parents disagreed with the IEP and, pursuant to the EHA, requested a due process hearing to review the determination. The Spieglers asserted that the Lab School of Washington, a private special education school, where they had enrolled Joseph in September 1984, was a more

appropriate educational environment for him because it would not involve contact with non-handicapped students.

The hearing was held on November 13, 1984, and the hearing officer issued his decision on January 2, 1985. The hearing officer concluded that the Janney program prescribed by the IEP would, with certain modifications, suffice for Joseph's needs. The Spieglers, however, continued to disagree with the decision and elected to keep Joseph at the Lab School, at their own expense, for the next three years. During this time, the Spieglers neither sought reconsideration of the DCPS placement decision nor asked the DCPS to re-evaluate Joseph's needs.

On November 19, 1987, almost three years after the hearing decision was issued, the Spieglers filed a complaint in district court under 20 U.S.C. § 1415(e)(2) requesting a declaration that Janney was an inappropriate placement for Joseph and that the Lab School was and is the preferable educational environment for Joseph. They sought recovery of tuition and expenses incurred since September 1984 for Joseph's education at the Lab School and an order that the District continue to reimburse them for Joseph's educational expenses.

The district court applied the 30–day local limitations period governing petitions for review of agency orders and dismissed the suit as time-barred. *Spiegler v. District of Columbia,* No. 87–3132, slip op. at 6 (D.D.C. Mar. 8, 1988) ("Mem. Op."), Joint Appendix ("J.A.") at 9. This appeal followed.

### B. *Statutory Framework*

The EHA provides federal funds to assist state and local agencies in educating handicapped children, but only on the condition that the state complies with certain goals and procedures. *See* 20 U.S.C. § 1412; *Board of Education v. Rowley,* 458 U.S. 176, 179–84, 102 S.Ct. 3034, 3037–40, 73 L.Ed.2d 690 (1982) (describing evolution and major provisions of the EHA). The Act's primary purpose is "to assure that all handicapped children have available to them * * * a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(c).

Among the procedural safeguards enacted by Congress are requirements that parents or guardians of handicapped children be notified of any proposed change in "the identification, evaluation, or educational placement of the child or the provision of a free appropriate education to such child," and that they be permitted to bring a complaint about "any matter relating to" such evaluation and education. § 1415(b)(1)(C)–(E). Complaints brought by parents or guardians must be resolved at "an impartial due process hearing," and appeal to the state educational agency must be provided if the initial hearing is held at the local or regional level. § 1415(b)(2), (c). Parties to such hearings must be accorded the right to counsel, the right to present evidence and cross-examine and compel witnesses, and the right to a written record of the hearing, findings of fact, and decisions. § 1415(d).

Thereafter, "[a]ny party aggrieved by the findings and decision" of the state administrative hearing:

> shall have the right to bring a *civil action* with respect to the complaint * * * in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

§ 1415(e)(2) (emphasis added). The Act does not, however, specify a limitations period for section 1415(e)(2) actions.

## II.

When Congress has not established a statute of limitations for a federal cause of action, it is well-settled that federal courts may "borrow" one from an analogous state cause of action, provided that

the state limitations period is not inconsistent with underlying federal policies. *See, e.g., Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985); *County of Oneida v. Oneida Indian Nation,* 470 U.S. 226, 240, 105 S.Ct. 1245, 1254, 84 L.Ed.2d 169 (1985); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). *But cf. DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 171–72, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983) (federal court may apply an analogous federal statute of limitations in the absence of a closely analogous state statute of limitations).

The District urges us to borrow the 30–day limitations period of D.C. Court of Appeals Rule 15(a) for petitions for review of agency orders. Appellants, on the other hand, advocate adoption of the 3–year statute of limitations under D.C.Code § 12–301(8) (Michie 1981) for actions "for which a limitation is not otherwise specially prescribed."

This is a question of first impression in this circuit. Our sister circuits that have been faced with similar though less extreme choices have disagreed as to whether the generally shorter period for administrative appeals should apply or whether a longer limitations period is more appropriate. *Compare Adler v. Education Department,* 760 F.2d 454, 457–59 (2d Cir. 1985) (four months) *and Department of Education v. Carl D.,* 695 F.2d 1154, 1157 (9th Cir.1983) (30 days) *with Schimmel v. Spillane,* 819 F.2d 477, 482–83 (4th Cir. 1987) (one year) *and Janzen v. Knox County Board of Education,* 790 F.2d 484, 487 (6th Cir.1986) (three years) *and Scokin v. Texas,* 723 F.2d 432, 437 (5th Cir.1984) (two years) *and Tokarcik v. Forest Hills School District,* 665 F.2d 443, 450 (3d Cir. 1981) (two or six years), *cert. denied,* 458 U.S. 1121, 102 S.Ct. 3508, 73 L.Ed.2d 1383 (1982).

▆ We accordingly note at the outset that neither 30 days nor three years appears to be a clearly accepted limitations period for actions under the EHA. Absent congressional action, local legislation, and other suitable alternatives, we appear to be confined to the choice presented to us by the parties. We note in passing that we must decline to apply an analogous federal statute of limitations, because we find no federal statute that "clearly provides a closer analogy than available state statutes." *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983).

## A. *Analogous State Cause of Action*

Our first task is therefore to decide whether a suit under section 1415(e)(2) of the Act is sufficiently analogous either to an administrative appeal or to a *de novo* civil action for statute-of-limitations purposes.

Section 1415(e)(2) permits "[a]ny party aggrieved by the findings and decision" of the state administrative hearings "to bring a civil action * * * in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy." The complaint may concern "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." § 1415(b)(1)(E). The reviewing court "shall receive the record of the [state] administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." § 1415(e)(2).

The Supreme Court, interpreting these provisions in *Board of Education v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed. 2d 690 (1982), rejected the contention that section 1415(e)(2) requires courts to exercise *de novo* review over state educational decisions and policies. *Id.* at 205, 102 S.Ct. at 3050. The Court also found unpersuasive, however, the view that reviewing courts had only limited authority to review for state compliance with the Act's procedural requirements and no power to review the substance of the state's program. *Id.* (noting that the Conference Committee em-

phasized that reviewing courts were to make "independent decision[s] based on a preponderance of the evidence") (citation omitted).

Rather, the Court held that the focus of a reviewing court's inquiry is twofold: whether the state has complied with the procedural requirements of the Act, and whether the IEP developed through these procedures is "reasonably calculated to enable the child to receive educational benefits." *Id.* at 206–07, 102 S.Ct. at 3050–51. The Court cautioned that "[i]n assuring that the requirements of the Act have been met, courts must be careful to avoid imposing their view of preferable educational methods upon the States." *Id.* at 207, 102 S.Ct. at 3051 (footnote omitted); *see also id.* at 207–08, 102 S.Ct. at 3051–52 (finding it "highly unlikely that Congress intended courts to overturn a State's choice of appropriate educational theories in a proceeding conducted pursuant to § 1415(e)(2)") (footnote omitted).

■ In light of the Court's interpretation in *Rowley,* we find that actions brought under section 1415(e)(2) of the Act are more analogous to appeals from administrative agencies than to causes of action "for which a limitation [period] is not otherwise specially prescribed," D.C.Code § 12–301(8). *See Adler v. Education Department,* 760 F.2d 454, 456 (2d Cir.1985) ("As a matter of logic, this action under section 1415(e)(2) * * * is essentially an appeal from administrative proceedings previously held first by the [local school board] and followed by an intermediate appeal to the Commissioner.") Indeed, this circuit recently noted that:

> Deference to the hearing officer makes sense in a proceeding under [section 1415(e) of] the Act for the same reasons that it makes sense in the review of any other agency action—agency expertise, the decision of the political branches (here state and federal) to vest the decision initially in the agency, and the costs imposed on all parties of having still another person redecide the matter from scratch.

*Kerkam v. McKenzie,* 862 F.2d 884, 887 (D.C.Cir.1988). *But see id.* ("But the district court's authority under § 1415(e) to supplement the record below with new evidence, as well as Congress's call for a decision based on the 'preponderance of the evidence,' plainly suggests less deference than is conventional.").

Appellants argue that section 1415(e)(2) differs from an administrative appeal in at least three important ways: the type of court to which review is taken, the evidence before the reviewing court, and the standard of review. We find, however, that these differences, while noteworthy, fail to render actions under section 1415(e)(2) sufficiently dissimilar to administrative appeals for purposes of borrowing an appropriate statute of limitations. *Cf. Wilson v. Garcia,* 471 U.S. 261, 272, 105 S.Ct. 1938, 1944, 85 L.Ed.2d 254 (1985) ("any analogies to [state] causes of action are bound to be imperfect") (footnote omitted).

Specifically, we find the distinction between the appellate review governed by D.C.App. Rule 15(a) and the trial court proceeding specified in section 1415(e)(2) to be relatively minor, given the reviewing court's quasi-appellate role under section 1415(e)(2). *See Rowley,* 458 U.S. at 205–08, 102 S.Ct. at 3050–52 (review of state administrative proceeding is primarily for procedural compliance with the Act, rather than *de novo*). Similarly, section 1415(e)(2)'s requirement that the trial court accept additional evidence at the request of a party does not significantly distinguish the nature of the proceeding from appellate review of administrative actions, because in both cases the administrative record is usually the principal evidence before the reviewing court. *See Rowley,* 458 U.S. at 206, 102 S.Ct. at 3050 (reviewing courts must give "due weight" to the record of the administrative proceeding); *Town of Burlington v. Department of Education,* 736 F.2d 773, 790 (1st Cir.1984) ("the Act contemplates that the source of the evidence generally will be the administrative hearing record, with some supplementation at trial"), *aff'd,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985).

Finally, we reject appellants' argument that the standard of review governing appeals from agency decisions is sufficiently different from that of section 1415(e)(2) as to require adoption of a different limitations period. Although the two standards of review are plainly different, *compare* § 1415(e)(2) (preponderance of the evidence) *with* D.C.Code § 1–1510(a)(3)(A), (E) (arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, or unsupported by substantial evidence in the record), both require a reviewing court to defer to the agency's substantive determinations. *See Rowley,* 458 U.S. at 206, 102 S.Ct. at 3050 ("the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review"); *accord Kerkam v. McKenzie,* 862 F.2d 884, 887 (D.C.Cir.1988); *Adler,* 760 F.2d at 458.

In sum, were we to compare an action under section 1415(e)(2) with an administrative appeal under Rule 15(a) without the benefit of *Rowley,* we might well have found sufficient differences to make this a closer question. *Cf. Tokarcik v. Forest Hills School District,* 665 F.2d 443, 450 (3d Cir.1981) (finding, before *Rowley,* that a section 1415(e)(2) action is "practically indistinguishable" from a *de novo* civil action), *cert. denied,* 458 U.S. 1121, 102 S.Ct. 3508, 73 L.Ed.2d 1383 (1982). In light of *Rowley,* however, we hold that a suit under section 1415(e)(2) is sufficiently analogous to an appeal from an administrative decision to permit us to borrow the 30–day local limitations period for such appeals.

## B. *Consistency with Federal Policies*

Even if the federal and local causes of action are analogous, we must reject the local limitations period if its adoption would be inconsistent with underlying federal policies. *See Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985); *Johnson v. Railway Express Agency,* 421 U.S. 454, 465, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975); *Forrestal Village, Inc. v. Graham,* 551 F.2d 411, 413 (D.C.Cir.1977).

Appellants argue that 30 days is simply too short a time period to be consistent with policies underlying the EHA, particularly if a parent or guardian is not represented by counsel or if placement problems surface only with the passage of time. We conclude, however, that a 30–day limitations period, when combined with a duty by the District to inform hearing participants of the short period, is not so harsh so as to be inconsistent with policies underlying the EHA.

The Act's primary requirement that states receiving federal funds under the Act provide handicapped children with a "free appropriate public education," §§ 1400(c), 1412(1), means that such states must provide *"personalized* instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Rowley,* 458 U.S. at 203, 102 S.Ct. at 3049 (emphasis added). To that end, states must prepare IEPs tailored to the unique needs of the handicapped child. § 1401(18). Local or regional educational agencies must review and, where appropriate, revise each child's IEP at least annually. § 1414(a)(5); *see also* § 1413(a)(11); 34 C.F.R. § 300.343(d); D.C.Mun.Reg. tit. 5 § 3011.1. Federal regulations provide that an IEP must be implemented *"as soon as possible* following the meetings [producing the IEP]." 34 C.F.R. § 300.342(b)(2) (emphasis added).

The Act's requirement of periodic and individualized assessments of each handicapped child evinces a recognition that children, particularly young children, develop quickly and that a placement decision that may have been appropriate a year ago may no longer be appropriate today. This recognition is also manifested in regulations governing the administrative proceedings, which require that the formal due process hearing be completed within 45 days after it is requested and that review of the hearing be completed within 30 days after receipt of request for such review. *See* 34 C.F.R. § 300.512(a), (b); *cf.* D.C.Mun.Reg. tit. 5 § 3010.2 (similar timeliness rules for

assessment and placement of a child). The Act, then, was intended to ensure prompt resolution of disputes regarding appropriate education for handicapped children. This includes, of course, the judicial review process and suggests the propriety of a relatively short statute of limitations.

Our reading of the Act is reinforced by its legislative history. Senator Williams, its principal author, stated in final Senate debate that:

> I cannot emphasize enough that delay in resolving matters regarding the education program of a handicapped child is extremely detrimental to his development. The interruption or lack of the required special education and related services can result in a substantial setback to the child's development. Thus, in view of the *urgent need for prompt resolution* of questions involving the education of handicapped children it is expected that *all hearings and reviews* conducted pursuant to these provisions will be *commenced and disposed of as quickly as practicable* consistent with a fair consideration of the issues involved.

121 Cong.Rec. 37,416 (1975) (emphasis added) (quoted in *Adler v. Education Department*, 760 F.2d 454, 460 (2d Cir.1985), and *Department of Education v. Carl D.*, 695 F.2d 1154, 1157 (9th Cir.1983)). Because the Act emphasizes the prompt resolution of disputes, we find at the outset that a shorter rather than longer statute of limitations would be more consistent with the policies underlying the Act.

We are mindful, however, that a number of our sister circuits have rejected the relatively short limitations periods governing administrative appeals as inconsistent with the purposes of the EHA. *See Schimmel v. Spillane*, 819 F.2d 477, 482 (4th Cir.1987) ("requiring unrepresented parties to act in such haste would be unduly harsh, and would undermine the federal policy of permitting review of decisions reached in administrative due process hearings in the federal courts"); *Janzen v. Knox County Board of Education*, 790 F.2d 484, 487 (6th Cir.1986) ("Applying the short limitations period and its accompanying narrow review

would undermine the judicial check on the local decisions. * * * Parents need time to evaluate their position and the position of their child."); *Scokin v. Texas*, 723 F.2d 432, 437 (5th Cir.1984) ("A short limitations period is contrary to the Act's goal of parental involvement. Thirty days is not enough time for parents to determine whether to pursue judicial review of their complaint."); *Tokarcik v. Forest Hills School District*, 665 F.2d 443, 451–53 (3d Cir.1981) (finding that a short limitations period would hinder full supplementation of the record, dilute the independence of judicial review of state administrative procedures, and frustrate the statutory policy of parental and school cooperation), *cert. denied*, 458 U.S. 1121, 102 S.Ct. 3508, 73 L.Ed.2d 1383 (1982).

We agree that 30 days is a relatively short limitations period, but find that several factors significantly mitigate any resulting harshness. First, the Act expressly requires state agencies to "*fully* inform the parents or guardian * * * of all procedures available pursuant to [section 1415]." § 1415(b)(1)(D) (emphasis added). We hold that this requirement imposes a duty on the District to give, at the time a final administrative decision is rendered, clear notice of the availability of judicial review and of the 30-day limitations period. *See Scokin*, 723 F.2d at 438 ("the [EHA's] requirement that educational agencies inform parents of all available procedures includes a duty to inform parents of the limitations period for judicial review"). This duty is not unduly burdensome and guarantees that the parents or guardians, who may not be represented by counsel, are fully informed of their statutory right to judicial review of the administrative decision.

Second, we recognize that a short limitations period may frustrate the goal of parental involvement to the extent that parties are pressured to adopt a unnecessarily adversarial posture. We note, however, that by the time parties have reached the point of considering judicial action, the matter will have already been determined twice through the administrative process. *See*

*Adler,* 760 F.2d at 457. Significantly, the parties do not necessarily have to prepare for trial during the 30 days allowed, they must only decide whether to continue their litigation efforts. *See Thomas v. Staats,* 633 F.Supp. 797, 806 (S.D.W.Va.1985) (applying 120–day limitations period instead of one year).

■ The relatively short limitations period is also tempered by the Act's provision for re-evaluation of the placement decision at least annually. *See* § 1414(a)(5). Each new placement decision will trigger a new 30–day period within which to file a claim. If the parents or guardians therefore decide not to seek judicial review of a particular administrative decision within the limitations period, the most they would lose would be the educational placement for that school year, thereby respecting the Act's requirement of separate IEPs for each school year. Indeed, the notice requirements of subsections 1415(b)(1)(C) and (D) suggest that parents or guardians be notified of the educational agency's obligation to review and, if appropriate revise, a handicapped child's IEP at least annually. Correcting an erroneous placement decision years later would not only be disruptive to the child, but would also require litigation of stale and possibly superfluous issues. *See Adler,* 760 F.2d at 459 (primary form of relief under section 1415(e)(2) is an order directing that a student receive the appropriate public education or that such student and his or her parents be accorded certain procedural safeguards). Moreover, given this annual review provision, if the parents or guardians unilaterally choose not to accept a given IEP without seeking re-evaluation of that decision in the following school year, the District's potential liability for tuition reimbursement would not extend beyond the year for which the IEP was fashioned. Such extended liability, coupled with a delayed resolution of the issue, would unnecessarily risk exposing the public fisc to years of accrued liability. *Cf. Washington v. District of Columbia,* 429 A.2d 1362, 1368 (D.C.1981) (en banc) (6–month notice requirement for personal injury claims against municipality intended to protect municipality against "unfair advantage by eventual claimant"); *Schuman v. Chicago Transit Authority,* 407 Ill. 313, 320–21, 95 N.E.2d 447, 451 (1950) (similar notice requirement upheld as a reasonable protection against the "intolerable burden" of complete investigation of every accident).

■ We further note, in light of the remedial nature of the Act, that principles of equitable tolling may properly extend the 30–day time limit so as not to bar, in the jurisdictional sense, a section 1415(e)(2) action otherwise properly presented to a reviewing court. *See Department of Education v. Carl D.,* 695 F.2d 1154, 1158 (9th Cir.1983) ("equitable considerations might militate against the rigid enforcement of a thirty-day limitation period where unrepresented parents or guardians are unaware of the availability of review of an adverse decision"); *Barnett v. District of Columbia Department of Employment Services,* 491 A.2d 1156, 1163 (D.C.1985) (noting that resort to technicalities to foreclose recourse to judicial processes is particularly inappropriate, especially in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process); *Kleiboemer v. District of Columbia,* 458 A.2d 731, 735 (D.C.1983) ("in determining in any given instance whether a statute of limitations should be tolled, we must examine the legislative purposes behind the limitation provision to determine whether they are effectuated by the tolling") (citation omitted), *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1279, 79 L.Ed.2d 683 (1984); *cf. Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (equitable tolling applies to filing of employment discrimination claim). *But see Flores v. Rental Housing Commission,* 547 A.2d 1000, 1003 (D.C.1988) ("This court has held that the time limits of Rule 15 are mandatory and jurisdictional, and that '[o]nce the time prescribed by the rule has passed, we are without power to hear the case.'") (citation omitted).

■ It would be inappropriate for us, at this point, to attempt to define all of the circumstances in which the 30–day time

limit might be excused. We merely note in passing that a federal court must take the state's tolling rules with the underlying limitations period to the extent they are consistent with federal law. *See Board of Regents v. Tomanio,* 446 U.S. 478, 483–86, 100 S.Ct. 1790, 1794–96, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 463–65, 95 S.Ct. 1716, 1721–23, 44 L.Ed.2d 295 (1975).

Finally, we are unpersuaded that the 3–year limitations period championed by appellants is any more consistent with federal policies than the 30–day time limit advocated by the District and applied by the district court. Appellants contend that a 3–year limitations period will not hinder prompt resolution of EHA claims because parents and guardians will be motivated to act quickly to ensure the proper educational program for their children, *see, e.g., Rowley,* 458 U.S. at 209, 102 S.Ct. at 3052 ("parents and guardians will not lack ardor to ensure that handicapped children receive all the benefits to which they are entitled by the Act"). This reason, however, does not justify application of a 3–year limitations period against an aggrieved state or local educational agency. More importantly, a 3–year time limit would permit a child incorrectly classified or placed to remain in an inappropriate program for up to three years after a final administrative decision before a federal action to review that decision even began. *See* § 1415(e)(3) (during administrative and review proceedings, absent agreement by the parties otherwise, "the child shall remain in the then current educational placement for such child, or, if applying for initial admission to a public school, shall * * * be placed in the public school program until all such proceedings have been completed"); *see also* 34 C.F.R. § 300.513; *Adler,* 760 F.2d at 459. A three-year limitations period would be inconsistent with this "status quo" or "stay put" provision and with the Act's overall emphasis on the need for prompt resolution of placement decisions.

We therefore conclude that the 30–day local limitations period for petitions for review of administrative decisions is not inconsistent with federal policies and there-

fore may be adopted for actions under section 1415(e)(2).

### C. *Application to this Case*

■ Appellants argue that, even if a 30–day limitations period applies to section 1415(e)(2) claims, the limitations period should not be applied to them. We agree.

Appellants were notified only that "[t]his determination is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction." Hearing Officer's Determination at 7, J.A. at 24. The District does not dispute that it did not give notice of the 30–day limitations period. Because the Act requires the District to give such notice, we hold that the District's failure to do so bars it from invoking the statute of limitations against appellants in this case.

We express no opinion, of course, on the merits of appellants' claims. We likewise leave to the district court to rule in the first instance on the District's claim that appellants' action is barred by laches.

### III.

In the absence of further guidance from Congress or the District of Columbia City Council, and faced with the unenviable task of choosing between a 30–day limitations period and a 3–year limitations period, we affirm the district court's ruling that civil actions under the EHA should be governed by the 30–day local limitations period of D.C.App. Rule 15(a). We find that section 1415(e)(2) actions are sufficiently analogous to petitions for review of agency orders for limitations purposes and that adoption of a 30–day limitations period would not be inconsistent with federal policies, so long as the District complies with its duty to give clear notice of the availability of judicial review and the applicable statute of limitations.

We reverse the district court's grant of the District's motion to dismiss, however, because the District in this case failed to inform the claimants of the time sequences for the process to be followed. The goals of the Education of the Handicapped Act

will not be furthered if either the parents or the District plays dodgeball with the processing of claims.

IT IS SO ORDERED.