## BOW SCHOOL DISTRICT

v.

## QUENTIN W. and Carolyn W.

### Civ. No. 90–347–S.

United States District Court,
D. New Hampshire.

Nov. 9, 1990.

---

Edward E. Lawson, Laconia, N.H., for plaintiff.

Grant C. Rees, Burlington, Vt., for defendants.

## ORDER

STAHL, District Judge.

In this action, plaintiff appeals the April 20, 1990 decision of a New Hampshire Department of Education hearing officer which concludes that (1) both the 1989–90 Individual Education Plan ("IEP") and the 1989–90 placement proposed for Ian W., defendants' son, were inappropriate; (2) that defendants' unilateral placement of their son in the Landmark School in Pride's Crossing, Massachusetts, for 1989–90 was appropriate; and (3) that defendants should be reimbursed by plaintiff for expenses incurred as a result of this placement. Plaintiff contends that the hearing officer's decision contravenes both the procedural and substantive requirements of the Education of the Handicapped Act ("EHA"), 20 U.S.C. § 1400, *et seq.* (1988).

Defendants have counterclaimed, alleging civil rights violations and seeking attorneys' fees. Jurisdiction is grounded upon the EHA, 20 U.S.C. § 1415(e)(2).[1]

Currently before the Court is defendants' motion to dismiss or, in the alternative, for summary judgment claiming plaintiff's action to be time-barred.

### 1. Facts

Since the first grade, Ian W. has been identified as an educationally handicapped student. He entered the Bow School District in the fourth grade (the 1984–85 school year) and was confirmed to be learning disabled in the spring of that year. In the sixth grade, Ian additionally was determined to be emotionally handicapped.

After some negotiation between the parents and the school district, Ian was placed in the Robert Frost School in Derry to implement his seventh grade (1987–88) IEP. However, Ian's behavior deteriorated as the year progressed and his parents were forced to withdraw him in the spring of 1988.

After reviewing Ian's experience at Robert Frost, the school district and parents agreed to return Ian to Bow for his eighth grade (1988–89) year. His IEP for that year called for Ian to be placed in a self-contained classroom for thirty hours per week with "mainstreaming" opportunities dependent upon behavior. The IEP was signed by Mrs. W. on June 6, 1988.

Ian struggled from the outset of the 1988–89 school year. Concern was expressed by both Mrs. W. and the self-contained classroom teacher that Ian's placement was improper. In an attempt to alleviate the situation, Ian's IEP and Annual Statement of Program ("ASP") were altered to place Ian in modified eighth grade mainstream classes with resource room supplementation. On September 27, 1988, the parents agreed to this change.

By October 1988, it became evident that Ian's behavior was not improving in the mainstream/resource room placement. Ian's parents and school officials met in October and November to address the issue. On December 2, 1988, it was agreed that Ian would be returned to the self-contained classroom.

Despite this change, Ian's behavior worsened. Subsequent IEP and ASP altera-

---

**1.** The relevant portion of 20 U.S.C. § 1415(e)(2) states:

> Any party aggrieved by the findings and decision made ... shall have the right to bring a civil action with respect to the com-

plaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.

tions providing for placement in an outside work program, for home tutoring, and for tutoring at Bow failed to bring about any substantial progress. Although no grades for Ian were received for the final two quarters of the 1988–89 school year, Ian nevertheless was promoted to the ninth grade.

In the summer of 1989, two different doctors evaluated Ian seeking to determine whether his education difficulties stemmed more from his emotional/behavioral difficulties or his learning disabilities. Their reports agreed that Ian's progress was restricted substantially by his language disorder. On the basis of these reports, Ian's parents rejected the 1989–90 IEP offered by the school district in August 1989, feeling that the Plan (which outlined a program similar to the one pursued so unsuccessfully in 1988–89) did not address adequately Ian's learning disability. When impasse was reached, Ian's parents unilaterally placed him in the Landmark School and requested a due process hearing. It is from the adverse ruling at this hearing that the school district brings this action.

*2. Discussion*

The Court first addresses the issue of whether the underlying action, instituted ninety-four days after the hearing officer issued her decision, is time-barred.

Since Congress has not established a statute of limitations for actions under the EHA, federal courts must "borrow" one from an analogous state cause of action, provided that the state limitations period is consistent with underlying federal policies. *Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1984); *County of Oneida v. Oneida Indian Nation,* 470 U.S. 226, 240, 105 S.Ct. 1245,

1254, 84 L.Ed.2d 169 (1984). Plaintiff urges this Court to borrow the three year period for bringing a "personal" action under New Hampshire Revised Statutes Annotated ("RSA") Chapter 508:4.[2] It argues that EHA § 1415(e)(2)'s provision allowing for the introduction of additional evidence makes it most analogous to a *de novo* civil action.[3] Defendants, on the other hand, urge the adoption of the thirty day statute of limitations under RSA 541:6,[4] which governs appeals from certain state administrative agencies. They argue that the procedures outlined in § 1415(e)(2) most closely resemble an administrative appeal.

A. Analogous State Statute

The First Circuit Court of Appeals has yet to address this question. The circuits which have confronted the issue disagree as to whether generally shorter administrative appeals statutes or a variety of longer statutes should apply. *Compare Spiegler v. District of Columbia,* 866 F.2d 461, 464–466 (D.C.Cir.1989) (thirty days); *Adler v. Education Department,* 760 F.2d 454, 457–459 (2d Cir.1985) (four months); *Department of Education v. Carl D.,* 695 F.2d 1154, 1157 (9th Cir.1983) (thirty days); *with Schimmel v. Spillane,* 819 F.2d 477, 482–483 (4th Cir.1987) (one year); *Janzen v. Knox County Board of Education,* 790 F.2d 484, 487 (6th Cir.1986) (three years); *Scokin v. Texas,* 723 F.2d 432, 437 (5th Cir.1984) (two years); *Tokarcik v. Forest Hills School District,* 665 F.2d 443, 450 (3rd Cir.1981) *cert. denied,* 458 U.S. 1121, 102 S.Ct. 3508, 73 L.Ed.2d 1383 (1982) (two or six years).

The appellate decision which is most recent and most like the instant action is *Spiegler, supra.* In that case, the D.C. Circuit was asked to choose either a thirty

**2.** RSA 508:4, in relevant part, provides:
    Except as otherwise provided by law, all personal actions, except actions for slander or libel, may be brought only within 3 years of the act or omission complained of....

**3.** The relevant portion of the subsection reads: In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and,

basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

**4.** RSA 541:6 states:
    Within thirty days after the application for a rehearing is denied, or, if the application is granted, then within thirty days after the decision on such rehearing, the applicant may appeal by petition to the supreme court.

day or a three year statute of limitations and apply it to an action brought by parents under § 1415(e)(2) almost three years after the state hearing officer's decision. The court, applying the Supreme Court's ruling in *Board of Education v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), disagreed with previous opinions which held that § 1415(e)(2)'s allowance of the introduction of supplemental evidence rendered it most comparable to a *de novo* civil action. Noting that *Rowley* rejected the contention that § 1415(e)(2) requires courts to exercise *de novo* review over state educational decisions and mandated that deference be given to hearing officer's findings, it held that § 1415(e)(2) actions are more analogous to administrative appeals and that the thirty day statute which governs such appeals should apply. *Spiegler*, 866 F.2d at 465. The Court agrees with this analysis.

The First Circuit has stated that "the Act contemplates that the source of the evidence generally will be the administrative hearing record, with some supplementation at trial." *Town of Burlington v. Department of Education*, 736 F.2d 773, 790 (1st Cir.1984), *aff'd*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). This fact, when coupled with the Supreme Court's admonition that "[§ 1415(e)(2)'s] provision that a *reviewing* court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities they *review*" (*Rowley*, 458 U.S. at 206, 102 S.Ct. at 3050) (emphasis supplied), leads this Court to the inescapable conclusion that an action under § 1415(e)(2) more closely resembles an administrative appeal under RSA 541:6 than a personal action under RSA 508:4. Like an administrative review, the evidentiary focus is upon the administrative record. Like an administrative review, the record before the district court is accorded presumptive validity. *See Burlington*, 736 F.2d at 790 (the Act "does not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony"). And like an administrative review, deference is owed to the hearing officer's determinations.

As the Supreme Court has noted, "it is 'the purest coincidence' when state statutes or the common law provide equivalent remedies; any analogies to those causes of action are bound to be imperfect". *Wilson v. Garcia*, 471 U.S. at 272, 105 S.Ct. at 1944 (footnote and citation omitted). Admittedly, the analogy to RSA 541:6 is not perfect. Nonetheless, for the reasons stated above, the Court finds it to be the New Hampshire statute most analogous to an action brought under § 1415(e)(2).[5]

Plaintiff argues that *James v. Nashua School District*, 720 F.Supp. 1053 (D.N.H. 1989) and *Edward and Laurie B. v. Brunelle*, 662 F.Supp. 1025 (D.N.H.1986) conclusively have established RSA 508:4 as the New Hampshire state statute governing the instant action. The Court disagrees.

In *James, supra*, plaintiffs brought an action under § 1415(e)(4)(B), which authorizes courts, in their discretion, to award attorneys' fees to parents or guardians who prevail in an action under the EHA. The court ruled that the state statute of limitations most analogous to such an action was RSA 508:4. However, a suit for attorneys' fees obviously differs from an action under § 1415(e)(2). No aspect of a § 1415(e)(4)(B) action is appellate in nature; rather, it can only be classified as a personal action seeking money damages. Nothing prevents different provisions of a federal statute from being characterized differently for statute of limitations purposes. *See Wilson v. Garcia*, 471 U.S. at 268, 105 S.Ct. at 1942. Therefore, the Court finds

---

5. New Hampshire's preference for thirty day statutes of limitation in appeals from administrative bodies is underscored in the planning and zoning context. RSA §§ 677:4 and 677:6 create a thirty day period for appealing zoning decisions of boards of adjustment or local legislative bodies. Similarly, RSA 677:15 mandates that appeals from land use planning board decisions be brought within thirty days. Like actions brought under EHA § 1415(e)(2), such appeals permit the introduction of additional evidence while giving deference to administrative findings.

the reasoning in *James* inapplicable to the instant action.[6]

Plaintiff similarly misreads *Edward and Laurie B.*, *supra*, as stating that RSA 508:4 governs § 1415(e)(2) actions. In that case, the court did not reach the issue of the most analogous state statute. Rather, it ruled that allowing parents to bring an action under § 1415(e)(2) sixty-four days after the hearing officer's decision was not "unreasonable". *Id.*, at 1032, Order on Pending Motions. The Court recognizes that the decision in *Edward and Laurie B.* rejected the application of the thirty day limitation period found in RSA 541:6. Nonetheless, this Court is constrained to apply the most analogous state statute in the absence of federal directive. For the reasons herein discussed, the Court finds RSA 541:6 to be most analogous to the instant action.

## B. Consistency with Federal Policies

Having located the most analogous state statute, this Court must determine whether its application comports with the policies underlying the federal Act. *See Wilson v. Garcia*, 471 U.S. at 266–267, 105 S.Ct. at 1941–1942; *County of Oneida v. Oneida Indian Nation*, 470 U.S. at 240, 105 S.Ct. at 1254. The Court finds persuasive the D.C. Circuit's analysis in determining that a thirty day statute of limitations does not contravene the policies underlying the EHA. *See Spiegler*, 866 F.2d at 466–469.

Clearly, speedy resolutions to the IEP and placement disputes that characterize § 1415(e)(2) actions are necessary for such resolutions to serve any substantively useful purposes.[7] Determining the propriety of a placement decision or an IEP made for a school year which has long since expired has extremely limited utility. Children develop quickly and their needs often change substantially from year to year. The Act and its accompanying regulations reflect this. Local teams must review and, if appropriate, revise a student's IEP at least annually. Section 1414(a)(5). The due process hearing must be held within forty-five days of a party's request, and a decision must be rendered within thirty days. 34 C.F.R. § 300.512(a), (b). The IEP must be implemented as soon as possible following the meetings which develop it. 34 C.F.R. § 300.342(b)(2). Therefore, a thirty day appeal period plainly dovetails with the policies underlying the EHA.

The Court agrees that thirty days can pass quickly and is aware that other courts have determined such a period to be unduly brief. Were this Court invested with legislative powers, perhaps it would set a longer statute of limitations. But absent congressional enactment or the passage of a more analogous statute by the New Hampshire legislature, the Court's inquiry is limited to whether RSA 541:6 undermines the policies underlying the EHA. Since it does not, RSA 541:6 must apply.

The somewhat draconian effects of a thirty day statute are mitigated in several ways. First, § 1415(b)(1)(D)'s requirement that state agencies "fully inform the parents or guardian ... of all procedures

---

6. This view has been embraced explicitly in New York. *Compare Adler v. Education Department*, *supra*, (holding that the statute of limitations for an action under § 1415(e)(2) is four months) *to Michael M. v. Board of Education*, 686 F.Supp. 995 (E.D.N.Y.1988) (holding that the statute of limitations for an attorneys' fees action under § 1415(e)(4)(B) is three years).

7. The legislative history of the Act supports this view. Senator Williams, the Act's principal author, stated in final Senate debate:

I cannot emphasize enough that delay in resolving matters regarding the education program of a handicapped child is extremely detrimental to his development. The interruption or lack of the required special education and related services can result in a substantial setback to the child's development. Thus, in view of the urgent need for prompt resolution of questions involving the education of handicapped children it is expected that all hearings and reviews conducted pursuant to these provisions will be commenced and disposed of as quickly as practicable consistent with a fair consideration of the issues involved.

121 Cong.Rec. 37,416 (1975) (*quoted in Spiegler*, 866 F.2d at 467).

available pursuant to [section 1415]" has been read as mandating that the school district provide parents with clear notice of the thirty day appeals period. *Spiegler*, 866 F.2d at 467, 469 (thirty day appeal period did not preclude action because parents did not receive notice of thirty day limitation). Moreover, § 1414(a)(5), which requires IEP review at least annually, contemplates a series of placement decisions as a child progresses educationally. Since each of these decisions triggers a new thirty day period, parents are afforded new causes of action on at least an annual basis. *See id.* at 468. Finally, the Court sees no reason why the principles of equitable tolling should not extend the thirty day period if circumstances so demand. *See id.* at 468–469. Such principles are particularly compelling when, as is often the case in § 1415(e)(2) actions, parents or guardians are proceeding *pro se.*

In the instant matter, plaintiff school district waited ninety-four days to bring the action. The Court finds no justification for the delay, especially given the strong policy reasons for demanding that school districts move as quickly as possible in matters such as developing IEPs and placements for educationally handicapped children.

### 3. Conclusion

Accordingly, defendants' motion to dismiss, or in the alternative, motion for summary judgment [document no. 8] is granted.

SO ORDERED.