**BOARD OF EDUCATION OF the CITY OF CHICAGO, Plaintiff,**

**v.**

**Debra Rae WOLINSKY, as Parent and Next Friend of Lance C., et al., Defendants.**

No. 92 C 3083.

United States District Court, N.D. Illinois, E.D.

Dec. 23, 1993.

Karen Gatsis Anderson, Janet Berniece Johnson–Vinion, Iris Ellen Sholder, City of Chicago Board of Educ., Chicago, IL, Heather K. Brickman, S. Bennet Rodick, Hodges, Loizzi, Eisenhammer, Rodick & Kohn, Arlington Heights, IL, for plaintiff.

Colleen Mary Minogue, Colleen M. Minogue, Attorney at Law, Charles F. Stone, Chicago, IL, for defendants.

## MEMORANDUM OPINION

GRADY, District Judge.

Before the court is the motion of the Board of Education of the City of Chicago ("the Board") and the Superintendent of the Chicago Public Schools for judgment on the pleadings on the counterclaim of Debra Rae Wolinsky and Lance C. As explained below, the motion is denied.

## BACKGROUND

Lance C. is a teenager afflicted with attention deficit disorder ("ADD"), which is characterized by a short attention span, poor peer relations, slowness at school, and a need for supervision in performing routine tasks. He also suffers from asthma, various allergies, and learning disabilities in word knowledge, visual-motor integration, and visual-motor speed.

In September 1989, Ms. Wolinsky at her own expense voluntarily enrolled Lance C. at Roycemore School, a private school in Evanston, Illinois. At the time of the initiation of this lawsuit, Lance C. was a ninth-grader at Roycemore placed in a general education curriculum with the school's other students. Before Roycemore, he was enrolled at the University of Chicago Laboratory School, another private institution.

In October 1989, while Lance C. was still attending Roycemore, Ms. Wolinsky enrolled him in the Chicago School District ("District") as a non-attending student for the purpose of evaluating his learning disabilities. On March 7, 1990, following the completion of that evaluation, the District held a conference to determine Lance C.'s eligibility for special education. At the conference, the District developed an Individual Educational Program ("IEP") which provided for Lance C.'s placement in a learning disabilities resource program with other disabled students.

Ms. Wolinsky, however, did not enroll Lance C. as an active student in the District, and in April 1991 she initiated a Level I due process hearing, as provided for by the Illinois School Code, for the purpose of seeking tutorial, learning disability, and transportation services. On October 15, 1991, the Level I hearing officer refused to grant Ms. Wolinsky's requested services because she had not made Lance C. available for an updated evaluation of his educational needs. Less than two weeks later, Ms. Wolinsky appealed the Level I decision and requested tutorial services and at least partial reimbursement for Lance C.'s tuition at Roycemore. On January 10, 1992, the Level II hearing officer decided Lance C. was entitled to home tutorial services to aid him in completing homework assignments from Roycemore and in coping with his disabilities.

In this action, the Board seeks judicial review of the Level II decision. It is entitled to such review under the Individuals With Disabilities Education Act ("the IDEA"), 20 U.S.C. § 1400 *et seq.*, which provides that, in order for public school districts to receive federal financial assistance, they must assure all disabled children between the ages of three and twenty-one a free appropriate public education ("FAPE").[1] The IDEA requires certain procedural safeguards regarding the provision of FAPE to disabled stu-

dents. Those procedures are provided in the Level I and II hearings and through judicial review. The Board contends that it is only required under the IDEA to place Lance C. in a learning disabilities resource program and that the Level II hearing officer's decision to require tutorial service is neither supported by the Illinois School Code nor the IDEA.

Seeking additional disabilities services and compensatory damages, defendants have counterclaimed against the Board, the Superintendent of the Chicago Public Schools, and the Illinois State Board of Education and its superintendent under the IDEA, § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), 42 U.S.C. § 1983, and the Illinois School Code—Counts I through IV respectively. The Illinois School Code, among other things, sets out guidelines to determine a disabled student's need for tutorial services, and § 504 (like the IDEA) requires the Board to provide FAPE to disabled children within the city's boundaries.

Counter-defendants have moved for judgment on the pleadings on the counterclaim based on statute of limitations and mootness grounds. Specifically, they contend that a claim under the IDEA must be brought within 120 days of the Level II decision, and that a claim under the Rehabilitation Act must be brought within two years of discovery of the alleged injury. Here, the counterclaim was brought almost seven months after the Level II decision and more than two years after the Board recommended placement in a learning disabilities resource program. Moreover, counter-defendants argue that the counterclaim is moot because it is based on an outdated IEP.[2]

## DISCUSSION

### Statute of Limitations for Count I—A Claim Under the Individuals With Disabilities Education Act

[1] The IDEA does not specify a statute of limitations. "When Congress has not es-

---

1. The purpose of the IDEA is to

 assure that all handicapped children have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, [and] to assure that the rights of handicapped children and their parents or guardians are protected....

 20 U.S.C. § 1400(c).

2. After counter-defendants filed their motion for judgment on the pleadings, Ms. Wolinsky and Lance C. conceded that they failed to sufficiently plead a cause of action under 42 U.S.C. § 1983. The court considers the § 1983 claim to be voluntarily dismissed.

tablished a time limit for a federal cause of action, the settled practice has been to adopt a local time limitation if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985). "Borrowing" a state statute of limitations involves a two-pronged analysis: first, does Illinois have an analogous statute of limitations; and second, would that limitations period be consistent with the IDEA's policies and goals. *See Elizabeth K. v. Warrick Cty. Sch. Corp.,* 795 F.Supp. 881, 885–86 (S.D.Ind.1992). Counter-defendants urge the court to adopt the 120–day deadline for appealing state administrative decisions. Specifically, § 14–8.02(k) of the Illinois School Code, 105 ILCS 5/14–8.02(k) (S.H.A.1993), sets forth a 120–day period in which to appeal a Level II decision regarding the educational placement of a student. Counter-claimants suggest the two year Illinois statute of limitations for personal injury lawsuits.

The IDEA counterclaim is more analogous to the review of a state administrative decision regarding educational placement than to a personal injury claim. Section 14–8.02 of the Illinois School Code directly implements the due process requirements of the IDEA, 20 U.S.C. § 1415, by providing for the availability of Level I and II hearings and state judicial review. The standard of review of a Level II decision in state court is similar to the standard of review outlined in the IDEA. *Compare* 105 ILCS 5/14–8.02(k) *with* 20 U.S.C. § 1415(e)(2); *see Spiegler v. District of Columbia,* 866 F.2d 461, 465–66 (D.C.Cir. 1989) (an appeal of a state administrative decision is analogous to judicial review under the IDEA despite somewhat different standards of review in state and federal courts); *Elizabeth K.,* 795 F.Supp. at 885–86 (same). It is thus appropriate that the same limitations period is applied to a federal court appeal of a Level II decision as is applied to a similar state court appeal.

The 120–day limitations period advances the IDEA's policy of assuring that the representatives of handicapped children promptly assert the children's educational rights. Failure to act promptly could significantly impair a child's educational progress. According to the legislative history of the Education for the Handicapped Act, which was amended by the IDEA,

> delay in resolving matters regarding the education program of a handicapped child is extremely detrimental to his development. . . . [I]n view of the urgent need for prompt resolution of questions involving [his education] it is expected that all hearings and reviews conducted pursuant to these provisions will be commenced and disposed of as quickly as practicable. . . .

*Alexopulos v. San Francisco Unified Sch. Dist.,* 817 F.2d 551, 556 (9th Cir.1987) (quoting 121 Cong.Rec. 37,416 (1975)). The two-year statute of limitations for personal injury actions would be inconsistent with the policy of prompt determinations of educational placements, especially if, as counter-claimants suggest, the limitations period starts running after the Level II decision, rather than after the parents' initial request for special services.

Contrary to counter-claimants' contention, the court does not view 120 days as an insufficient length of time to determine the necessity of appeal, or as a hindrance to settlement discussions and parental involvement in educational placements. Because an IEP must be reevaluated every school year, the parents may challenge the new IEP through the administrative process if they decide not to seek judicial review of the old IEP. *See Spiegler,* 866 F.2d at 468. Moreover, by the time the parties have reached the point of considering judicial action, the matter will have already been determined twice through the administrative process, so "[f]our additional months seems ample time for the necessary preparation and institution of suit." *Adler v. Educ. Dept. of the State of New York,* 760 F.2d 454, 457 (2d Cir.1985); *Spiegler,* 866 F.2d at 467. Indeed, several courts that have decided this issue have borrowed a shorter state limitations period—30 days—for appealing administrative decisions. *See, e.g., Elizabeth K.,* 795 F.Supp. at 881; *Gertel v. Sch. Comm. of Brookline Sch. Dist.,* 783 F.Supp. 701 (D.Mass.1992); *Bow Sch. Dist. v. Quentin W.,* 750 F.Supp. 546 (D.N.H. 1990).

■ Although we find that a Level II decision must be appealed to a federal district court within 120 days, we do not consider Count I of the counterclaim to be untimely. The correct statute of limitations for an IDEA claim is an unsettled issue in this circuit. Counter-claimants, who apparently were not represented by an attorney at the Level II hearing, attest that they were unaware of a 120–day deadline, and the Level II hearing officer did not apprise them that the court might apply such a deadline, even though the IDEA requires the state to fully inform the parents or guardians of the procedural avenues open to them when it acts or refuses to act with regard to educational treatment. 20 U.S.C. § 1415(b)(1)(D); *Spiegler*, 866 F.2d at 467 (holding that the state has a duty "to give, at the time a final administrative decision is rendered, clear notice of the availability of judicial review and of the [limitations period]"). In these circumstances, several courts have justifiably refused to apply the limitations period to bar claims under the IDEA. *Id.* (the school district's failure to give notice of the appeals deadline "bars it from invoking the statute of limitations in this case"); *Thomas v. Staats*, 633 F.Supp. 797, 807–08 (S.D.W.Va.1985) (refusing to retroactively apply a borrowed statute of limitations for appealing state administrative decisions).

It may also be, in any event, that the counterclaim "relates back" to the timely filing of the underlying action. It has been held that, under the Federal Rules of Civil Procedure, "a plaintiff's institution of a lawsuit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim." *Burlington Industries, Inc. v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir.1982), *cert. denied*, 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983); *see also* *Salstone v. General Felt Industries, Inc.*, No. 84 C 9976, 1990 WL 37265, 1990 U.S.Dist.LEXIS 2312 (N.D.Ill. March 1, 1990); Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, 6 Fed.Pract. & Proced. § 1419, at 152. The Illinois state courts adhere to a similar rule. 735 ILCS 5/13–207.

■ Even if the counterclaim does not relate back to the complaint, defendants at the very least should be given some time, after plaintiffs file a complaint under the IDEA seeking judicial review of the Level II decision, to decide if they want to file what is in effect a cross-appeal of the Level II decision. The Federal Rules of Appellate Procedure provide appellees with such a grace period:

> If a timely appeal is filed by a party, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period last expires.

Fed.R.App.P. 4(a)(2). Here, plaintiffs filed this action 120 days after the Level II decision,[3] and defendants counterclaimed less than three months later. While strict analogy to Rule 4(a)(2) would give the parents less than 60 days to file the counterclaim,[4] the court finds the counterclaim to be timely in this case because plaintiffs were not prejudiced by the extra time counter-claimants took to file the counterclaim, and because the extra time will not appreciably delay review of the Level II decision.

Accordingly, while the court finds the applicable limitations period under the IDEA to be 120 days, it denies counter-defendants' motion for judgment on the pleadings on Count I.

---

**3.** The complaint was actually filed 122 days after the Level II decision, but the 120th day fell on a Saturday. When a federal court borrows a state's statute of limitations, it also borrows the applicable tolling and extension provisions, as long as they are not inconsistent with federal law. *Gray v. Lacke*, 885 F.2d 399, 409 (7th Cir.1989), *cert. denied*, 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990); *Lewellen v. Morley*, 875 F.2d 118, 120 (7th Cir.1989). It is well-established under Illinois law that, if the limita-

tions period expires on a date on which the courts are closed, the period shall be extended to the next business day. *Brown v. City of Chicago*, 573 F.Supp. 1375, 1381 (N.D.Ill.1983); 5 ILCS 70/1.11.

**4.** A notice of appeal must be filed within 30 days of entry of judgment, and Rule 4(a)(2) gives the appellee 14 days—or less than half of 30 days—to file a cross-appeal.

### Statute of Limitations for Count II—A Claim Under § 504 of the Rehabilitation Act

 Because § 504 also does not specify a statute of limitations, the court again borrows the limitations period governing an analogous Illinois cause of action. Section 504 is a civil rights statute, *see Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1107 (9th Cir.1987), akin to 42 U.S.C. § 1983. *Wilson*, 471 U.S. at 276, 105 S.Ct. at 1947. The Supreme Court has characterized a § 1983 action as a personal injury action. *Id.* The two-year Illinois statute of limitations for personal injury suits, 735 ILCS 5/13–202, is thus applicable to § 504 of the Rehabilitation Act. *Bush v. Commonwealth Edison Co.*, 990 F.2d 928, 933 (7th Cir.1993); *see also Alexopulos*, 817 F.2d at 554 (applying California's one-year personal injury statute of limitations to a § 504 claim).[5]

 The parties agree that the two-year limitations period began to run on March 7, 1990, when the District held a conference to develop the IEP which gave rise to the administrative proceedings and this lawsuit. Without any tolling, counter-claimants' § 504 claim, filed on July 31, 1992, was brought almost five months too late. When the court borrows a state limitations period, however, it applies the tolling and extension rules of the state, as long as they are not inconsistent with federal law. *Gray v. Lacke*, 885 F.2d 399, 409 (7th Cir.1989), *cert. denied*, 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990); *Lewellen v. Morley*, 875 F.2d 118, 120 (7th Cir.1989). The following Illinois tolling provision is applicable here:

> When thee commencement of an action is stayed by injunction, order of court, or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action.

735 ILCS 5/13–216.

 A student and his representative bringing a § 504 claim seeking FAPE generally must exhaust administrative remedies under the IDEA, namely by pursuing Level I and II remedies. *See Carey v. Maine Sch. Admin. Dist. No. 17*, 754 F.Supp. 906, 923 (D.Me.1990) (the exhaustion requirements under the IDEA apply to all claims under § 504 seeking to enforce rights guaranteed by the IDEA). The exhaustion requirement is in effect a stay of an action by statutory prohibition, making applicable the tolling provision of 735 ILCS 5/13–216. *See Lawson v. Glover*, 957 F.2d 801, 806–07 (11th Cir. 1987) (tolling statute of limitations during exhaustion of administrative remedies). Tolling the statute of limitations applicable to § 504 would not be inconsistent with the IDEA's policy of prompt disposition of educational placement disputes because the exhaustion requirement could take longer than the limitations period; without tolling, access to a judicial forum in some instances could be barred.

The court therefore finds that the limitations period was tolled while the parties were involved in the Level I and II hearings. As counter-defendants do not contest that this time exceeds five months, counter-claimants' § 504 claim is timely, and the court denies the motion for judgment on the pleadings on Count II.

### Mootness—Counts I, II, and IV

 Counter-defendants argue that Counts I, II, and IV are moot, to the extent they request prospective relief, because they are based on the IEP which was developed at the March 7, 1990, meeting. IEP's are re-evaluated on a yearly basis, so the IEP at issue may no longer be in effect, or at least may be outdated. Counter-defendants also maintain those counts are moot because the

---

**5.** It may appear anomalous to apply a 120–day statute of limitations under the IDEA and at the same time apply a two-year statute of limitations under § 504 of the Rehabilitation Act, which like the IDEA seeks to ensure disabled students free appropriate education. In practice, however, the two limitations periods may not be so radically different. The 120 days starts running when the Level II hearing officer renders a decision, while the two years starts running when the student suffers injury, most likely when the school district offers or denies a special education program, before the institution of Level I or II proceedings.

Board has not been able to examine Lance C. since 1990, so there is no way of telling what type of educational placement is appropriate at this time.[6]

The Supreme Court has rejected this mootness argument:

> Judicial review invariably takes more than nine months [the length of the school year] to complete, not to mention the preceding state administrative hearings. The District Court thus ... retain[s] jurisdiction to grant relief because the alleged deficiencies in the IEP were capable of repetition as to the parties before it yet evading review.

*Bd. of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 186–87 n. 8, 102 S.Ct. 3034, 3040–41 n. 8, 73 L.Ed.2d 690 (1982). Relying on *Rowley*, the Fifth Circuit reviewed an administrative decision regarding educational placement even though the IEP at issue had expired two years prior to judicial review and had been replaced by another IEP, and even though the student's disability had likely changed since the initial IEP. *See Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1040–41 (5th Cir.1989).

Here, the parties dispute the type of educational programs to which Lance C. is entitled, and there is a reasonable expectation that the conduct giving rise to this suit will recur, yet evade review during the academic year. *See id.* at 1040. For example, Lance C.'s entitlement to tutorial services may likely be an issue every year he is entitled to FAPE. Interim events have not "completely and irrevocably eradicated the alleged violation." *Robbins v. Maine Sch. Admin. Dist. No. 56*, 807 F.Supp. 11, 14–15 (D.Me.1992). Therefore, the court may, under the IDEA, § 504 of the Rehabilitation Act, and the Illinois School Code, adjudicate Counts I, II, and IV of the counterclaim.

## CONCLUSION

The motion of the Board of Education of the City of Chicago and the Superintendent of the Chicago Public Schools for judgment

on the pleadings on Counts I, II, and IV of the counterclaim is denied. The court considers Count III, alleging a claim under 42 U.S.C. § 1983, as having been voluntarily dismissed.

---

**6.** Curiously, counter-defendants do not explain why, if we adopt their view of mootness, their complaint is not rendered moot. Counter-defendants also seek relief based on the outdated IEP.