Filed:  March 16, 2001

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

─────────────

Nos. 99-2533(L)
(CA-98-66-1, CA-99-3)

─────────────

CM, etc., et al.,

                              Plaintiffs - Appellants,

          versus

The Board of Education of Henderson County,
etc., et al.,

                              Defendants - Appellees.

─────────────

O R D E R

─────────────

     The court amends its opinion filed February 21, 2001, as follows:

     On page 3, section 1, line 1 -- counsel's firm name is corrected to read "The Law Firm of Paul L. Erickson."

     On page 5, first paragraph, line 1 -- a period is added after the abbreviation "Stat."

                              For the Court - By Direction


                              /s/ Patricia S. Connor
                              ─────────────────────
                                      Clerk

PUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CM, a minor, by and through her
parents, JM and EM, and on their
own behalf,
Plaintiffs-Appellants,

v.

THE BOARD OF EDUCATION OF
HENDERSON COUNTY, a/k/a
Henderson County Public Schools;
DAN G. LUNSFORD, Education
Department Superintendent; LINDA

R. HAWK, Chairman; JACKIE H.
HORNSBY, Vice Chairman; ERVIN W.
BAZZLE; BRENDA O. BROCK; ALLEN
A. COMBS; THOMAS E. ORR; THOMAS
B. PRYOR; JUDY DIANE HARTMAN
COOK, in their official and
individual capacities,
Defendants-Appellees,

STATE OF NORTH CAROLINA,
Intervenor.

No. 99-2533

M.E.; P.E., on their behalf and on
behalf of their son, C.E.,
Plaintiffs-Appellants,

v.

THE BUNCOMBE COUNTY BOARD OF
EDUCATION, a/k/a Buncombe County
Public Schools,
Defendant-Appellee,

and                                                    No. 00-1101

STATE OF NORTH CAROLINA,
Intervenor.

UNITED STATES OF AMERICA; NORTH
CAROLINA SCHOOL BOARDS
ASSOCIATION,
Amici Curiae.

Appeals from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburg, District Judge.
(CA-98-66-1, CA-99-3)

Argued: December 4, 2000

Decided: February 21, 2001

Before WIDENER and MOTZ, Circuit Judges, and
Terrence W. BOYLE, Chief United States District Judge
for the Eastern District of North Carolina, sitting by designation.

_____

Affirmed in part and reversed and remanded in part by published
opinion. Judge Motz wrote the opinion, in which Judge Widener and
Chief Judge Boyle joined.

_____

2

**COUNSEL**

**ARGUED:** Paul Lawrence Erickson, THE LAW FIRM OF PAUL L. ERICKSON, Asheville, North Carolina; Peter W.D. Wright, Deltaville, Virginia, for Appellants. Kevin Kendrick Russell, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Curiae United States. Ann L. Majestic, THARRINGTON SMITH, L.L.P., Raleigh, North Carolina; Christopher Zemp Campbell, ROBERTS & STEVENS, P.A., Asheville, North Carolina, for Appellees. Joyce S. Rutledge, Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Intervenor. **ON BRIEF:** Michael F. Easley, Attorney General of North Carolina, Thomas J. Ziko, Special Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Intervenor. Bill Lann Lee, Acting Assistant Attorney General, Mark L. Gross, Rebecca K. Troth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Judith A. Winston, General Counsel, Kala Shah Surprenant, UNITED STATES DEPARTMENT OF EDUCATION, Washington, D.C., for Amicus Curiae United States. Elaine M. Whitford, THARRINGTON SMITH, L.L.P., Raleigh, North Carolina; Allison B. Schafer, NORTH CAROLINA SCHOOL BOARDS ASSOCIATION, Raleigh, North Carolina, for Amicus Curiae Association.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

We consider today, as a matter of first impression, whether a state statute, providing that a request for a due process hearing must be filed within sixty days of an agency decision, is inconsistent with the Individuals with Disabilities Education Act (IDEA). We conclude that as long as a party seeking such a hearing is supplied with the required statutory notice, this limitations period does not conflict with federal policies embodied in the IDEA.

I.

Both cases before us involve requests for IDEA services on behalf of autistic children. The North Carolina public school system has

3

developed a nationally recognized program for educating autistic children known as the TEACCH program. But the parents of both children involved in these cases concluded that the Lovaas program, a rival method for the education of autistic children, offered their children more hope for a normal life. Accordingly, the parents placed their children in Lovaas therapy. When the parents asked school officials to reimburse them for the cost of the Lovaas program under the IDEA, those officials refused. Both sets of parents continued to negotiate for a time with school administrators, and then filed petitions for due process hearings. State administrative law judges (ALJs) dismissed all or most of the claims in these petitions as untimely.

We first briefly outline the statutory scheme at issue here and then the specific relevant facts of the two cases before us.

A.

The IDEA creates a federal grant program to assist state and local agencies in educating disabled children. See 20 U.S.C. § 1412 (1994 & Supp. IV 1998). To receive funds under the IDEA, states must provide disabled children with the opportunity to receive a "free appropriate public education," § 20 U.S.C. § 1412(a)(1), by providing special education and related services in an "individualized education program" (IEP). 20 U.S.C. § 1412(a)(4). "[T]o ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate public education," the IDEA requires states to establish and follow certain procedures. 20 U.S.C. § 1415(a). Among these is the requirement that, if parents of a disabled child and an educational agency disagree as to the appropriateness of an IEP or a question of financial responsibility, parents have the right to resolve the matter at an "impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency." 20 U.S.C. § 1415(f).

North Carolina has implemented the IDEA in N.C. Gen. Stat. § 115C-111, et seq. (1999). In this statute, as instructed by the IDEA, North Carolina has provided parents the right to an impartial due process hearing, which is referred to in state law as a "[r]ight of [r]eview"

4

at a "contested case" hearing. N.C. Gen. Stat. § 115C-116(c); N.C. Gen. Stat. § 150B-23.

The IDEA itself imposes no time limit on the period in which parents may request a due process hearing. The chapter of the North Carolina code implementing the IDEA, however, directs that "[e]xcept as otherwise provided in this section, the administrative review shall be initiated and conducted in accordance with Article 3 of Chapter 150B of the General Statutes, the Administrative Procedure Act [APA]." N.C. Gen. Stat. § 115C-116(d).

The North Carolina APA, in turn, provides that "a contested case shall be commenced by filing a petition." N.C. Gen. Stat. § 150B-23(a). It further provides:

> Unless another statute or a federal statute or regulation sets a time limitation for the filing of a petition in contested cases against a specified agency, <u>the general limitation for the filing of a petition in a contested case is 60 days. The time limitation</u>, whether established by another statute, federal statute, or federal regulation, or this section, <u>shall commence when notice is given of the agency decision to all persons aggrieved</u> who are known to the agency by personal delivery or by the placing of the notice in an official depository of the Unites States Postal Service wrapped in a wrapper addressed to the person at the latest address given by the person to the agency. <u>The notice shall be in writing, and shall set forth the agency action, and shall inform the persons of the right, the procedure, and the time limit to file a contested case petition.</u> When no informal settlement request has been received by the agency prior to issuance of the notice, any subsequent informal settlement request shall not suspend the time limitation for the filing of a petition for a contested case hearing.

<u>Id.</u> § 150B-23(f) (emphasis added).

B.

In <u>M.E.</u>, the family moved to North Carolina from Maryland in August 1995, after C.E. had been diagnosed as autistic at a TEACCH

5

center in North Carolina. When the family arrived in North Carolina, C.E.'s parents initially placed C.E. in a Lovaas program. Pleased with C.E.'s progress, in March 1996 his parents contacted the Buncombe County school authorities seeking funding for the Lovaas program under the IDEA. Extensive negotiations followed, including several meetings, letters, and the preparation of a draft IEP. C.E.'s parents repeatedly rejected any proposed placement of C.E. other than in the Lovaas program.

In June 1997, the parents decided that C.E. had substantially recovered because of the Lovaas therapy and wished him placed in regular public school classes. In that same month, C.E. was medically re-evaluated and school officials agreed with the parents that C.E. was no longer disabled.

In July 1997, the parents again requested funding for C.E.'s past participation in the Lovaas program. The parents and attorneys for the Buncombe County Board of Education exchanged letters in August 1997 discussing "settlement" of this claim. In neither the August letters, nor in any prior or subsequent correspondence, did the Board state that it was providing written notice of its final decision to deny all but nominal reimbursement for the Lovaas program or that the applicable limitations period for filing a petition for a due process hearing was sixty days from the date of that denial. The Board did forward with one of the August letters a copy of the current IDEA notice and attorneys' fees provisions, as well as recently amended North Carolina "mediation provisions."

In April 1998, the parents filed a petition for a due process hearing, seeking reimbursement for C.E.'s Lovaas therapy. A state ALJ found that one of the Board's August 1997 "settlement" letters was "final rejection" of the parents' reimbursement claim, and that their petition had been filed 257 days after the August letter, on April 22, 1998. The ALJ concluded that the Board provided the parents "with the requisite notice pursuant to § 150B-23." Accordingly, the ALJ held that the parents' petition was untimely. A state review officer affirmed this decision. The parents then filed a complaint in the district court, which granted summary judgment to the Board, reasoning that the ALJ had correctly ruled that the 60-day limitations period barred the claim.

6

The facts of <u>CM</u> are similar to those in <u>M.E</u>. CM was diagnosed with autism at age two and her parents brought her from New Hampshire to North Carolina to take advantage of the TEACCH program. In 1993, CM began the TEACCH program, where she made educational progress. However, after learning of Lovaas therapy, CM's parents removed her from TEACCH and enrolled her in the Lovaas program.

In December 1994, CM's parents asked Henderson County school authorities to fund her participation in the Lovaas program under the IDEA. After a series of meetings, school officials proposed an IEP for the 1995-1996 school year, which placed CM in a full day program with TEACCH. This IEP was mailed to the parents on February 16, 1995, with an accompanying letter explaining why school officials believed that the IEP set forth an appropriate plan for CM. The February 16, 1995 letter also discussed the possibility of mediation, explaining that mediation "does not in any way limit or delay a formal due process hearing or other legal procedure." Finally, the letter noted that "[y]ou indicated that you have a copy of the Handbook of Parent's Rights, which outlines appeal options available" and forwarded another copy of the handbook to the parents. Again, neither in this letter nor in later communications did the school board state that it was providing written notice of its final decision to deny reimbursement for the Lovaas program or that the applicable 60-day limitations period for requesting a due process hearing had been triggered.

The parents responded by requesting first mediation and then a re-evaluation of CM by outside consultants. Although the parents and school authorities exchanged numerous letters, mediation never occurred; however, outside consultants did re-evaluate the child. As the previous IEP was about to expire, school officials began to prepare a new IEP for CM. After further negotiation and re-evaluation of CM, school officials and CM's parents participated in IEP meetings during August and September 1996 for the 1996-1997 school year. The 1996-1997 IEP again proposed placing CM in the TEACCH program, and the parents again objected, favoring the Lovaas program.

On November 1, 1996, the parents filed a petition for a due process hearing, seeking reimbursement for CM's participation in the Lovaas

7

program for the 1993-1994, 1994-1995, and 1995-1996 school years and placement in Lovaas therapy in the 1996-1997 school year. That petition was consolidated with a petition that CM's parents had filed on June 25, 1996, seeking reimbursement for costs associated with obtaining outside evaluation of CM. On March 24, 1997, another state ALJ (not the ALJ that ruled in <u>M.E.</u>) found the parents' claims untimely and granted summary judgment to the Henderson County schools with respect to the reimbursement claims and assertion of IDEA violations in the 1993-1994, 1994-1995, and 1995-1996 school years. The ALJ reasoned that the parents' "rights to file a contested case expired 60 days after the February 16, 1995 correspondence." On December 11, 1997, after a multi-day hearing, still another ALJ entered a final order finding the 1996-1997 proposed IEP appropriate. On March 3, 1998, a state review officer affirmed all of these decisions.

The parents then filed a complaint in the district court seeking to recover on the claims rejected by the ALJs, asserting new IDEA claims for the 1997-1998 and 1998-1999 school years, and a host of other new contentions. Ultimately, the district court rejected all of the parents' claims.[1] With respect to the 60-day limitations period, the court concluded that the ALJ had properly applied that limitations period to bar the parents' claims for the 1993-1994, 1994-1995, and 1995-1996 school years.

We consolidated <u>M.E.</u> and <u>CM</u> on appeal and permitted the State of North Carolina to intervene as an appellee, urging affirmance. We also permitted the North Carolina School Boards Association to appear as an amicus, urging affirmance, and the United States to appear as an amicus, urging reversal. We appreciate the assistance of the intervenor and amici.

_____

[1] In addition to arguments related to the limitations issue, CM raises other contentions on appeal including claims based on asserted procedural violations during the administrative process and a claim for reimbursement for the 1996-97 school year. We have considered all of these contentions and have concluded that the district judge properly rejected them. Accordingly, we affirm those portions of the judgment on the reasoning of the district judge. We also reject as meritless CM's contentions that asserted procedural irregularities in the district court require reversal.

II.

Although the IDEA itself sets no limit on the time in which parents may request a due process hearing, no party before us (nor any amici) maintains that parents have an unlimited period in which to request such a hearing. Rather, all agree that the most appropriate limitations period should be borrowed from state law and that borrowed period should control the time allowed to request an IDEA due process hearing.

When Congress fails to provide a statute of limitations, federal courts borrow the most analogous state statute of limitations, provided that it is not inconsistent with underlying federal policies. See County of Oneida v. Oneida Indian Nation, 470 U.S. 226, 240 (1985). Therefore, we must first evaluate which North Carolina statute of limitations constitutes the most analogous limitations period. Next we must decide whether that period is in any way inconsistent with the federal policies contained in the IDEA.[2]

_____

[2] The limitations period we consider today governs only state administrative hearings, access to which is traditionally governed by the states. It does not establish the period for filing an IDEA action in federal court. Indeed, the limitations period in question governs special education proceedings in a state tribunal that necessarily commence and conclude before a federal cause of action ever arises. See Kirkpatrick v. Lenior County Bd. of Educ., 216 F.3d 380, 387 (4th Cir. 2000) (IDEA cases in federal court are not "appeals" from state agency decisions, but rather original actions filed in district court). Because Congress arguably left the creation of a limitations period for requesting a state administrative hearing to the states, one might contend that "borrowing" is unnecessary here. However, we implicitly rejected this view in Manning v. Fairfax Co. Sch. Bd., 176 F.3d 235 (4th Cir. 1999), when we held, in a case from Virginia, that the borrowing analysis was the appropriate method of determining the limitations period for filing requests for IDEA administrative due process hearings. Moreover, the parents, the State of North Carolina, the United States, and the only two other circuits to have considered the question have all employed the borrowing analysis in this situation. See Strawn v. Missouri State Bd. of Educ., 210 F.3d 954 (8th Cir. 2000); Murphy v. Timberlane Reg'l Sch. Dist., 22 F.3d 1186 (1st Cir. 1994). Accordingly, we apply that analysis here. We note, however, that even if the choice of a limitations period was regarded as a matter left

9

The school board, the State of North Carolina, and their amicus contend that the most appropriate limitations period for an initial request for an IDEA due process hearing in North Carolina is 60 days and that this period should, therefore, be borrowed. They rely on N.C. Gen. Stat. § 115-116(d), which directs that initiation of administrative due process hearings in special education cases be conducted in accordance with the state administrative procedure act, which, in turn, provides a 60-day limitations period. See N.C. Gen. Stat. § 150B-23(f).

The parents and their amicus, the United States, assert that borrowing this short limitations period would be "inconsistent with the IDEA's purposes because it ensures that many legitimate claims will be forfeited through inadvertence or inability to locate representation in such a short time, rendering ineffective the protections Congress created for children with disabilities." Brief of United States at 20. Furthermore, they maintain that such a short period would "interfere with attempts by the parents and school to seek an amicable resolution short of litigation by forcing administrative review almost immediately upon completion of the IEP process." Id. They suggest that North Carolina's catch-all three-year statute of limitations for statutory actions for which no limitations period is otherwise provided, see N.C. Gen. Stat. § 1-52(2), constitutes a better borrowing choice.

Logic virtually compels the conclusion that a state special education statute, specifically enacted to comply with the IDEA, like N.C. Gen. Stat. § 115C-116, constitutes the state statute most analogous to the IDEA. Accordingly, when a state legislature incorporates into its own special education statute a limitations period, as the North Carolina legislature has here, that period almost certainly constitutes the state limitations period for IDEA purposes. See generally Schimmel v. Spillane, 819 F.2d 477, 481 (4th Cir. 1987); see also Cleveland Heights-Univ. Heights Sch. Dist. v. Boss, 144 F.3d 391, 397 (6th Cir.

_____

to the states, a federal court would still have to determine that a state's choice of limitations period did not conflict with the federal policies animating the IDEA. We believe that analysis would involve many of the same considerations discussed above and would lead to the same conclusion we reach here.

10

1998); <u>Dell v. Board of Educ.</u>, 32 F.3d 1053, 1060 (7th Cir. 1994). Thus, we hold the 60-day limitations period in § 150B-23 is the period associated with the state statute, § 115C-116, most analogous to the IDEA.**3**

Whether that 60-day statute of limitations is inconsistent with federal policies animating the IDEA, however, presents a more difficult question. To resolve it, we must first ascertain what policies Congress intended to further in the IDEA. Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d).

To achieve that purpose, the Act embodies a federal policy that IDEA disputes should be resolved quickly to ensure that disabled children receive their statutorily guaranteed free appropriate public education while they can most benefit from it. The Act's requirement of yearly placement reassessment, 20 U.S.C. § 1414(d)(4), demonstrates Congress's understanding that children develop quickly, and that once-correct placement decisions can soon become outdated. If a limitations period is too long, remedies may be delayed by months or years of litigation and become anachronistic before ever being implemented. The Act's intent would obviously be thwarted if placement decisions were not carried out until after a child could benefit from those placements. Senator Williams, the IDEA's principal

_____

**3** We recognize that <u>Shook v. Gaston County Bd. of Educ.</u>, 882 F.2d 119 (4th Cir. 1989), involves a limitations period in an IDEA case from North Carolina. That case, however, concerned a statute of limitations for filing an IDEA action in federal court, rather than statute of limitations for an administrative claim. Moreover, in <u>Shook</u>, the sole question was whether a disabled adult could bring an action to obtain reimbursement for special education services incurred while she was a minor. We held she could. In doing so, we assumed, and no party argued to the contrary, that North Carolina's three year catch-all statute of limitations, N. C. Gen. Stat. § 1-52(2), applied, and we concluded that this statute had been tolled while the plaintiff was a minor. Because we had no occasion to consider § 150B-23(f) or even engage in the borrowing analysis, <u>Shook</u> with its vastly different focus provides no authority for application of § 1-52(2) rather than § 150B-23(f) in the case at hand.

11

author, recognized this in the final Senate debate, stating that "I cannot emphasize enough that delay in resolving matters regarding the education program of a handicapped child is extremely detrimental to his development." 121 Cong. Rec. 37,416 (1975).

An equally important IDEA policy is to encourage parents to participate in the education of their disabled children and to provide them with the procedural tools to enforce the mandate of the Act. Indeed, the Supreme Court has specifically recognized the centrality of this federal policy:

> It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process . . . as it did upon the measurement of the resulting IEP against a substantive standard.

Board of Educ. v. Rowley, 458 U.S. 176, 205-206 (1982).

Thus, the IDEA requires that schools collaborate with parents in developing IEPs, 20 U.S.C. § 1414(d)(1)(B), directs states to provide a due process hearing for parents who disagree with school authorities' decisions involving their child's education, 20 U.S.C. § 1415(f), and establishes a parental right to file an action in federal court if dissatisfied with the result of that due process hearing, 20 U.S.C. § 1415(i)(2). An unduly short limitations period might eliminate the intended collaborative nature of the IDEA; parties will not continue to negotiate if parents are forced too quickly to initiate a due process hearing to preserve their rights. Moreover, to take advantage of their right to a due process hearing and judicial review, parents must have sufficient time to understand any adverse decision by school authorities, evaluate any IDEA claim arising from an adverse decision, hire an attorney if necessary, and then proceed to challenge the adverse decision. Congress did not establish procedural rights as impediments to IDEA claims or as a means to foreclose parental involvement in their children's education. Rather, these rights were created to supply a simple and efficient method to encourage parental participation and facilitate parental enforcement of the IDEA.

12

So important did Congress find this policy that it specifically directed school officials to provide parents of disabled children with all necessary information regarding the procedures guaranteed by the Act so that parents could take advantage of its protections. For example, the IDEA requires school authorities to supply detailed written notice whenever they propose or refuse to initiate or change the identification, evaluation, or placement of a child. See 20 U.S.C. §§ 1415(b)(3) and (c). The Act also mandates that at several distinct phases of negotiations between parents and school officials, school officials must provide parents with a procedural safeguard notice. See 20 U.S.C. § 1415(d). Again, the notice must be detailed and, among other things, must contain information about the right to a due process hearing. See 20 U.S.C. § 1415(d)(2). The policy behind these detailed notice requirements is obvious. Congress wanted to eliminate the possibility that disabled children would lose their right to benefits or that parents would forfeit their role in their children's education because of ignorance of the Act and its procedural safeguards; hence, Congress placed the onus upon school authorities to inform parents of their IDEA rights.

In the context of original judicial IDEA actions (sometimes inaccurately described as "appeals" from state administrative due process hearings, see Kirkpatrick v. Lenoir Co. Bd. of Educ., 216 F.3d 380, 385 (4th Cir. 2000)), federal courts have struggled to accommodate these competing policies. Some have upheld short limitations periods as consistent with the policy of "speedy resolution of IDEA-related disputes" and simply ignored the question of whether such short periods improperly interfere with parental involvement and procedural rights. See, e.g., Boss, 144 F.3d at 397 & n.6 (adopting 45-day limitations period); Adler v. Educ. Dept. of New York, 760 F.2d 454, 459-60 (2d Cir. 1985) (adopting 4-month limitations period). Other courts have found short limitations periods fundamentally inconsistent with the IDEA's policy of "parental participation in decision making procedures" and its panoply of guaranteed procedural rights, and so have rejected such periods without much consideration of the countervailing policy of quick resolution of IDEA disputes. See, e.g., Birmingham v. Omaha Sch. Dist., 220 F.2d 850, 855 (8th Cir. 2000); Scokin v. Texas, 723 F.2d 432, 436-37 (5th Cir. 1984); Tokarcik v. Forest Hills Sch. Dist., 665 F.2d 443, 451-53 (3d Cir. 1981).

13

The better-reasoned cases have attempted to take account of all relevant federal policies. They have upheld a short limitations period only when satisfied that it was accompanied by features that could "significantly mitigate" infringement on procedural rights and parental participation; most notably, these courts have found a requirement in the IDEA that school authorities provide "clear notice" of the relevant limitations period. See, e.g., Spiegler v. District of Columbia, 866 F.2d 461, 467 (D.C. Cir. 1989). See also Amann v. Town of Stow, 991 F.2d 929, 932 (1st Cir. 1993). If parents receive such notice and nonetheless fail to act within the allotted time, their claims are barred, see Amann, 991 F.2d at 933, but if parents do not receive this notice, school authorities cannot invoke limitations against them, see Spiegler, 866 F.2d at 467.

In Schimmel, we, too, attempted to balance the various federal policies embodied in the IDEA. 819 F.2d 477. We concluded that a "very short limitations period would conflict with the federal policies," and instead Virginia's one-year catch-all statute of limitations best furthered these policies. Id. at 482. Our "most serious concern" with the suggested alternative 30-day limitations period was that parents unrepresented by counsel might be "unaware of" and so "unfairly penalized by a very short" limitations period. Id. Although we recognized that it had been held that the IDEA required that "educational agencies inform parents of the applicable limitations period," it was "not clear to us" that the IDEA "actually impose[d] such a duty on educational agencies." Id. Moreover, in Schimmel, the Virginia 30-day statute of limitations clearly contained no such obligation, and the defendant school board specifically contended that"it had no duty to inform the [parents] of the statute of limitations." Id. Given these facts, we held that the "one-year statute of limitations . . . str[uck] an appropriate balance between the need for speedy resolution of disputes and the need to ensure that the parties have a fair opportunity to obtain judicial review." Id. at 483. **4**

_____

**4** In Schimmel, we did not specifically resolve the question of whether the IDEA (in 20 U.S.C. § 1415(b)(1)(D)(1982) now recodified and expanded in § 1415(b)-(d)) requires educational agencies to inform parents of the applicable limitations period and we need not resolve that question in this case in view of the fact that N.C. Code § 150B-23(f) clearly does require this.

14

Recently, in <u>Manning v. Fairfax Co. Sch. Bd.</u>, 176 F.3d 235 (4th Cir. 1999), we considered what limitations period applied to initiation of IDEA administrative due process hearings in Virginia. We were not asked to apply a short "30 to 60-day statute of limitations," <u>id.</u> at 239 n.3, but rather, were faced with a choice of no limitations period, a five-year limitations period, or the one-year catch-all period. <u>Id.</u> at 238. In this context, we followed <u>Schimmel</u> and borrowed the same general one-year catch-all limitations period borrowed in that case. We reasoned that "[t]here is nothing to persuade us that disputes in administrative IDEA proceedings are so different in nature from those in judicial IDEA actions as to justify application of disparate limitations periods." <u>Id.</u> at 239.**5** Moreover, we quoted with approval <u>Schimmel</u>'s determination that the one-year limitations period struck an "appropriate balance" for the competing policies embodied in the IDEA, remarking that this period was "not so prohibitively short . . . that it undermine[d] the IDEA's policy of providing parents an opportunity to protect their disabled children's educational rights." <u>Id.</u>

_____

**5** In so commenting, we did not hold that the two contexts present identical issues. In fact, some factors suggest that a longer limitations period might be warranted in the administrative context. After all, a failure to meet the administrative limitations period forecloses not just a federal judge's second or third look at a question, but any review of it by an impartial decision-maker. <u>See Murphy</u>, 22 F.3d at 1192. Furthermore, at the administrative due process hearing, parents must formulate the issues, gather evidence, prepare witnesses, and create a record; arguably, this task requires more time than that needed to prepare for judicial review. On the other hand, other factors suggest that a longer limitations period is appropriate in the judicial context. Arguably, preparing a complaint initiating a federal lawsuit, which must meet the requirements of federal law, requires more time and expertise than filing an informal one-page administrative petition. Moreover, Congress's concern that IDEA disputes be quickly resolved seems to have focused on eliminating lengthy administrative proceedings, rather than on limiting the time for seeking judicial review. <u>See Tokarcik</u>, 665 F.2d at 454 n.20. In sum, somewhat different issues are involved in the two contexts but these point both ways and in <u>Manning</u> we concluded that these differences did not justify adoption of different limitations periods. Of course, in <u>Manning</u> we were not confronted with the situation in which a state legislature had specifically enacted different limitations periods in the administrative and judicial contexts.

15

Schimmel, Manning, and the out-of-circuit cases provide some helpful guidance in elaborating on the relevant policy concerns and appropriate balancing approach. Moreover, Schimmel establishes circuit precedent that a generally applicable, very short limitations period for IDEA actions in federal court, without any requirement that school authorities provide clear notice of the limitations period, is inconsistent with federal policies embodied in the IDEA. Although in Manning we were not confronted with an argument urging adoption of a very short limitations period, we certainly suggested that for similar reasons such an abbreviated limitations period for initiation of an IDEA administrative due process hearing would also conflict with these policies. See Manning, 176 F.3d at 239 and n.3 (relying on Schimmel's determination as to the proper balance of federal interests, holding that the one-year period was "not prohibitively short," and noting that school authorities did not claim that a 30 or 60-day limitations period applied). However, no case -- not Schimmel, not Manning, not any of the out-of-circuit precedent-- has considered the application of a statutory scheme like that encompassed in N.C. Gen. Stat. § 115-116(d) and § 150B-23(f) to requests for IDEA administrative due process hearings.[6]

Indeed, the North Carolina statutory scheme apparently differs in a fundamental respect from any statute previously considered by any court in any IDEA context. It contains an explicit requirement that school authorities clearly and fully notify parents of the limitations period. Under North Carolina law, the 60-day limitations period only commences "when notice is given of the agency decision to all persons aggrieved who are known to the agency." N.C. Gen. Stat. § 150B-23(f). Moreover, "[t]he notice shall be in writing, and shall

_____

[6] The only other appellate opinions to have determined what limitations period applies to initial requests for IDEA due process hearings are no more apposite than Manning. See Strawn, 210 F.3d 954; Murphy, 22 F.3d 1186. Like Manning, neither involves a very short limitations period, or one requiring notice of its commencement. Rather, both Strawn and Murphy focus on determining whether a multi-year limitations period frustrated the federal policy that IDEA claims be quickly resolved. See Strawn, 210 F.3d at 957 (5-year limitations period is too long); Murphy, 22 F.3d at 1192-1194 (6-year limitations period not too long).

16

set forth the agency action, and <u>shall</u> inform the [aggrieved] persons of the right, the procedure, and the time limit to file a contested case petition." <u>Id.</u> (emphasis added). Thus, without clear and complete written notice that a final agency decision has been taken, that parents can contest the decision by filing a petition for a due process hearing, and that such petitions must be filed within 60 days of the contested agency decision, § 150B-23(f)'s abbreviated limitations period is never triggered. Not only do the school authorities concede that the statute so directs, <u>see, e.g.</u>, Brief of Appellee Buncombe County Bd. of Educ. at 17 ("Section 150B-23(f) only applies to cases where a school system <u>triggers</u> the provision by providing written notice of the limitations period <u>and</u> notice of the school system's decision"), but a review of North Carolina case law indicates that its courts would not countenance any departure from, or relaxation of, statutory requirements. <u>See Clay v. Employment Sec. Comm'n</u>, 457 S.E.2d 725, 727 (N.C. 1995) ("Statutes of limitations `should be not extended by construction.'"); <u>Pearson v. Nationwide Mut. Ins. Co.</u>, 382 S.E.2d 745, 748 (N.C. 1989) (requiring strict compliance with statutory notice requirement); <u>Williams v. Bowden</u>, 494 S.E.2d 798, 800 (N.C. App. 1998) (same); <u>Cameron & Barkley v. American Ins. Co.</u>, 434 S.E.2d 632, 637 (N.C. App. 1993) (notice must be in exact form specified in statute).

Does § 150B-23(f)'s notice requirement sufficiently accommodate the federal policies we found inconsistent with the short limitations period in <u>Schimmel</u>? Obviously, this clear and specific notice provision does much to further the IDEA's strong commitment to informing parents fully of their procedural rights. It goes hand in glove with the extensive notice provisions contained in the IDEA itself. <u>See</u> 20 U.S.C. §§ 1415(b)(3), (c), and (d). Moreover, the notice requirement in § 150B-23(f) ameliorates "[o]ur most serious concern" in <u>Schimmel</u>, i.e., that parents would be "unaware of" and thus "penalized by a very short" limitations period. <u>Schimmel</u>, 819 F.2d at 482.

On the other hand, this 60-day limitations period (although twice as long as that at issue in <u>Schimmel</u>) does not provide a vast amount of time for parents to exercise the right to a due process hearing. This abbreviated time period also may be in some tension with the IDEA's policy of encouraging parental collaboration in placement decisions involving their children. Therefore, although the notice provision in

17

§ 150B-23(f) goes a long way to alleviating the concerns we voiced in <u>Schimmel</u>, it is not clear that such a provision alone makes an otherwise too-short limitations period acceptable. Given the holdings in <u>Schimmel</u> and <u>Manning</u>, if the 60-day limitations period at issue here had not been specifically selected by the state legislature to apply to these actions, it would be a close question whether circuit precedent required us to find it contrary to the policies embodied in the IDEA.

But, unlike the statutes at issue in <u>Schimmel</u> or <u>Manning</u>, the North Carolina legislature has specifically mandated that the 60-day limitations period applies to IDEA disputes. Thus, N.C. Gen. Stat. § 115(c)-116(d), the portion of the North Carolina Code implementing the IDEA and establishing IDEA due process hearings, provides that "administrative review shall be initiated and conducted in accordance" with N.C. Gen. Stat. § 150B-23, which in turn sets forth the 60-day limitations period. Moreover, in doing so, North Carolina has acted in full accord with the congressional directive that states conduct administrative due process hearings "as determined by State law." 20 U.S.C. § 1415(f).

<u>Manning</u> and <u>Schimmel</u> did not implicate an attempt by a state to legislate a statute of limitations specifically for IDEA proceedings. When a state does do this, as North Carolina has, we believe a federal court should give the chosen state limitations period special deference when determining whether it conflicts with policies animating the IDEA. <u>See Boss</u>, 144 F.3d at 397.[7] Accordingly, although we recognize that in <u>Schimmel</u> we concluded that policies embodied in the IDEA required that we reject a short limitations period, we believe a different result is required here. Principally because the statute at issue here, unlike that in <u>Schimmel</u>, contains an express requirement of clear and unambiguous notice of the agency action and of the commencement and time of the limitations period, and also because, again unlike <u>Schimmel</u>, the state expressly designated that this abbreviated limitations period govern IDEA administrative proceedings, we con-

_____

[7] Of course, if the choice the state has struck is totally inconsistent with the IDEA, a court must reject it. For example, a statute like that in <u>Schimmel</u> would still unacceptably conflict with federal policies even if it were part of a state special education statute specifically referencing the IDEA.

18

clude that adoption of this 60-day limitations period is not inconsistent with federal policies animating the IDEA.

III.

The parents in each case before us contend that even if we should hold, as we now have, that the 60-day limitations period applies to requests for IDEA administrative due process hearings in North Carolina, it does not bar their claims because they did not receive the required notice of the limitations period. The school authorities, of course, argue to the contrary. In each case they rely on certain letters sent to the parents.

In M.E., the school system maintains that two letters sent to the parents in response to the parents' settlement demand meet the statutory requirements of § 150B-23(f). On July 29, 1997, C.E.'s father mailed to the school system's representative a long letter attempting to settle the parents' claims for reimbursement and threatening resort to a due process hearing if the school board did not provide reimbursement within ten days. The school responded in letters dated August 7, 1997 and August 8, 1997. The first August letter states that the school system was inclined to make a counter-offer of "some portion of the expenses actually incurred," but notes that "[p]rior to making any offer, however, the Board of Education must be consulted and must approve the payment." The letter explains that school authorities hoped to obtain "settlement authority, if any, within the next week." It then notes the parents' ten-day threat and remarks that the parents "of course, have the right to file a due process petition at any time, however, the reality of school systems requires that the governing board be consulted and that process takes time." The letter encloses copies of the most current authorization of the IDEA and recent North Carolina legislation amending state IDEA mediation rules. The second letter is very short and simply makes a conditional counter-offer to settle the parents' claim for $6,000 pending "final approval by the Board."

In CM, school authorities rely upon a letter sent by the Director of Programs for Exceptional Children of the Henderson County Schools, to CM's parents on February 16, 1995. The letter accompanies that year's proposed IEP for CM and explains in some detail the decisions

19

made in that IEP and the process leading to these decisions, including previous discussions with the parents. The letter then mentions the possibility of mediation, noting that while not mandatory "it is certainly a positive step in resolving differences" and "does not in any way limit or delay a formal due process hearing or other legal procedure." The letter concludes by noting that the parents had indicated that they had a copy of the North Carolina "Handbook on Parents' Rights, July, 1994, edition, which outlines appeal options available," and encloses another copy of the handbook.

In both cases, the ALJs determined that these facts demonstrated that the school authorities provided the parents with the requisite notice pursuant to § 150B-23(b). We find no error in the historical facts found by the ALJs, but we believe that the ALJs misapplied the law to the facts; the school authorities did not provide the statutorily required notice. Although § 150B-23(f) does not require notice in a specific form, it does, as the school boards and State concede, mandate that parents be provided express written notice of the commencement of the limitations period. As the State puts it, "the 60-day statute -- by its terms -- cannot be applied to parents without notice." Brief of Intervenor State of North Carolina at 6 n.4; see also Brief of Appellee Buncombe County Bd. of Educ. at 16 ("In order for a claim to be barred by the 60-day limitation in North Carolina . . . a school system must affirmatively provide parents with notice of the 60-day limitation."). In neither M.E. nor CM did the school system "affirmatively provide" the parents with the required notice, and so "by its terms" the limitations period "cannot be applied to [the] parents."

Section 150B-23(f) instructs that the 60-day limitations period begins only when aggrieved persons are provided written notice "of the agency decision;" the notice must "set forth the agency action" and inform aggrieved persons of "the right, the procedure, and the time limit to file a contested case petition." N.C. Gen. Stat. § 150B-23(f). To satisfy these requirements, the written notice must communicate that the agency has acted and that this action is one that triggers the right to file, within sixty days, a contested case petition for a due process hearing. Unless the school authorities do this, parents, who will often have already engaged in lengthy negotiations with the school system, will likely (and understandably) conclude that a school is simply stating its present bargaining posture, which is open to fur-

20

ther negotiation and does not trigger any limitations period. The instant cases illustrate this precise problem.

In M.E., the letters on which the school board relies merely articulate a conditional settlement counter-offer. They were part of ongoing negotiations; offers and counter-offers exchanged in this context are rarely considered by their senders or recipients as the final word on anything, even when they claim to be so. Of course, the school system's letters here did not make this claim. Rather, both were expressly made contingent on approval by the Board of Education of Buncombe County. Indeed, it is hard for us to believe that, had the parents accepted the school system's counter-offer, and the Board had failed to ratify it, school authorities would not have expected more negotiations to have ensued thereafter.[8] These letters were part of a lengthy correspondence between the parents and the school. There was nothing about them to indicate to the parents that they had more significance than any other letters received from school officials. Parents cannot be expected to divine that such correspondence communicates conclusive agency action, which can be challenged only by resort to a due process hearing and which triggers a short limitations period to pursue such a challenge.

The letter relied upon in CM suffers from similar deficiencies. It also is one in a series of communications between the school and the parents. Although it admirably describes in some detail the action taken by the school and the reason for that action, it does not in any way indicate that the action is more significant than earlier actions taken by the school as part of its continuing negotiations with the parents. Again, nothing in the letter signals to the parents that this letter, as opposed to other detailed letters from school officials received over

_____

[8] As noted above, in the midst of the August 7 letter, the school system's representative stated that the parents had "the right to file a due process petition at any time." The parents maintain that this statement waived the school system's right to rely on the 60-day limitations period and estopped it from doing so. For the reasons stated by the district court, we reject these arguments. However, we believe that this comment does effectively demonstrate that the letters were regarded at the time, by the school system, as well as the parents, as a part of settlement negotiations, not as a notice of an appealable completed agency decision.

21

a years-long negotiation process, triggered the limitations period. Indeed, the letter's discussion of mediation, which the parents then requested in writing four days later, combined with the many (more than 60) subsequent letters exchanged between the parties, could well have led the parents to conclude that this letter was nothing more than one in a series of negotiation communications. Again, a parent cannot be required to discern that such an innocuous letter constituted notice of decisive agency action, which could be controverted only by an impartial decision-maker after an administrative hearing, which had to be requested within sixty days of the letter. **9**

In sum, in neither case did the school systems' letters adequately notify the parents that school authorities had reached a final decision that could be challenged only in a due process hearing, which had to be requested within sixty days. See Powers v. Indiana Dept. of Educ., 61 F.3d 552, 558 n.7 (7th Cir. 1995) (holding that only when a parent "received a final denial" of her claim by state department of education did the limitations period begin). Cf. Spiegler, 866 F.2d at 649 (noting that even when a notice of denial of claimed IDEA benefits was held otherwise deficient, school authorities informed parents that the decision was "final."). Indeed, in neither case did the school systems' letters provide any indication of the letters' importance sufficient to lead a parent to suspect that those letters, among the many other similar letters received from the school boards, had far more significant legal consequences than appeared on their face.**10**

_____

**9** As in M.E., for the reasons stated by the district court, we reject CM's claims that this letter provides grounds for estoppel because in it school authorities assertedly lured the parents into continuing to negotiate without ever raising limitations. By the same token, the school system's statement in the letter that mediation "did not in anyway limit or delay a formal due process hearing" could well, as the parents suggest, have confirmed their view that the parties could continue to negotiate without "in any way limit[ing]" the parents' future right to "a formal due process hearing." In other words, again as in M.E., the challenged statement, while not estopping the school system from relying on the 60-day limitations period, does evidence the "negotiating" character of the school system's letter.

**10** A school system's obligation to provide adequate notice is hardly burdensome. As M.E. points out, satisfactory notice could have been

22

Nor, contrary to the school boards' assertions, did distribution of the Handbook of Parents' Rights to the parents prior to these letters (and in CM again with the assertedly critical letter) remedy the inadequacies of the letters. The handbook is a 23-page single-spaced manual generally dispensed by local educational authorities to parents of special education children in North Carolina. The manual contains a summary of laws -- both the IDEA and the state special education laws -- "governing the rights of parents" of disabled children and a copy of federal regulations setting forth "procedural safeguards under the IDEA." On page 12, the manual states that a parent "may file a petition for an impartial due process hearing . . . to challenge the identification, evaluation, or placement of a child." In the next sentence, the manual states that "[i]n order to exercise the right to a due process hearing, the parent must file a petition within 60 days of written notice of the contested action."

Unquestionably, the handbook provides parents with information as to the correct procedure for filing a request for a due process hearing and the length of the limitations period. What it does not do is tell parents that the school system has issued a decision involving their particular child that triggers commencement of the time limitations for filing a request for due process hearing. A school system cannot make parents "notice-proof" simply by periodically distributing publications containing the law setting forth the "right, procedure, and time

_____

achieved as easily as adding a single sentence to the August 8 letter; such a sentence could have been worded: "Pursuant to N.C. Gen. Stat. § 150B-23 this letter constitutes your notice of final agency action, which you have a right to contest at a due process hearing by filing a contested case petition with the Office of Administrative Hearing; that petition must be filed within sixty days of receipt of this letter or you will lose your right to contest this action." The record in these cases reveals that North Carolina ALJs and state hearing review appeal officers routinely include similar language in their opinions. Moreover, other boards of education in North Carolina have apparently had little difficulty complying with the notice requirement. See, e.g., Glen III v. Charlotte-Mecklenberg Sch. Bd. of Educ., 903 F. Supp. 918, 925 (W.D.N.C. 1995).

23

limit" of a request for a due process hearing. <u>See generally Canada Life Assurance Co. v. Lebowitz</u>, 185 F.3d 231 (4th Cir. 1999).**11**

The very reason that the North Carolina Supreme Court has refused to extend statutes of limitations "by construction" is to "ensure that parties have notice of the time limits applicable to <u>their</u> cases." <u>Clay</u>, 457 S.E.2d at 727 (emphasis added). Unless parents are informed that an agency decision in their case has triggered the limitations period, simply notifying them of the general right, procedure, and time limitation to request a due process hearing is worthless. In holding that there had been no satisfactory compliance with another statutory notice requirement, we recently explained that statutory protections "are meaningless" if those sought to be protected "do not know of their existence," <u>Thomas v. Grand Lodge of Int'l. Ass'n. of Machinists & Aero. Workers</u>, 201 F.3d 517, 520 (4th Cir. 2000); so, too, statutory protections are meaningless when those sought to be protected do not know that the limited time for invoking those protections has commenced.

Neither the letters relied on in these cases nor the handbook distributed to the parents sufficiently notified them that school authorities no longer intended to negotiate, that they had reached a conclusive decision that could only be challenged at a due process hearing, which the parents had to request within sixty days of receipt of the letters. Accordingly, the school boards did not comply with § 150B-23(f) and so cannot invoke that statute to bar consideration of M.E.'s claim to reimbursement or CM's claim to reimbursement for the 1995-1996 school year.**12**

_____

**11** For this same reason, the fact that one of the parents is an attorney, familiar with special education law, does not cure the deficiency in the letters. For purposes of this appeal, we assume that the attorney-parent had actual knowledge that § 150B-23(f) required that a request for a due process hearing be filed within 60 days of an agency decision in order to contest that decision at a formal due process hearing. However, nothing in the record indicates the attorney-parent had actual knowledge that school authorities had issued what they considered to be an agency decision triggering this limitations period, and the parent specifically denies such knowledge.

**12** The basis for the district court's holding in <u>CM</u> that school authorities provided notice with respect to the 1993-1994 and 1994-1995 school

24

IV.

To summarize, we affirm the district court's determination that the Board of Public Education of Henderson County provided CM with a free appropriate public education in the 1996-1997 school year. We reverse the district court's determination that § 150B-23(f) bars M.E.'s claim and CM's claim with regard to the 1995-1996 school year, and we remand both cases for further proceedings consistent with this opinion.

<u>AFFIRMED IN PART AND REVERSED AND
REMANDED IN PART</u>

_____

years is unclear. It appears that the district court may not have actually resolved this issue, focusing only on the notice provided as to the 1995-1996 year. We remand this issue to the district court, expressing no view on whether notice complying with the statute was provided in the earlier years. We also note that although the ALJ found CM's parents' claims for reimbursement in the 1993-1994 and 1994-1995 school years barred for additional reasons, the district court did not address these reasons, and so we will not consider them in the first instance.